Case 5:07-cv-06354-JW   Document 1-4   Filed 12/14/2007   Page 1 of 13

**EXHIBIT C**

甲第2号証



投　資　契　約　書

平成 18 年 2 月 28 日

投資家契約

大久保　泉（以下「甲」という）、アンタラ・バイオサイエンス・インコーポレーテッド（以下「乙」という）、および日本における乙のスポンサーである株式会社ユーラス・ゲノミックス（以下「丙」という）は、乙の発行する普通株式を甲が取得するにあたり、下記の事項について合意する。

第1条（本株式の発行および引受）
　乙は、乙が発行する普通株式 19,000 株を、一株当たり10,000円の発行価額で（以下「目的株式」という）甲に譲渡する。

第2条（払込手続）
　甲は、2006年02月28日、または、別途甲および乙が合意する期日までに、乙の指定する下記の銀行別段預金口座へ、その引き受ける本株式の発行価額総額　　　円を振込むものとする。

　　　振込先：　　Bank of Tokyo-Mitsubishi UFJ
　　　　　　　　　(Tokyo Head Office)
　　　　　　　　　FAO Bank of Hawaii, Honolulu
　　　　　　　　　A/C 653-0409596
　　　　　　　　　FFC　Antara Biosciences Inc.
　　　　　　　　　Attn:　Treasury #244

　乙は、甲の請求があれば、甲の支払を受け取ってから30日内に本株式を表章する株券を乙の費用で甲に交付する。

第3条（重要事項の決定）
1　　　甲は、以下の重要事項に関し、乙の書面による通知を受けるものとする。
　　　①合併、営業譲渡、株式交換、株式移転、会社分割、減資、解散
　　　②新株の発行、普通社債の発行、新株予約権付社債の発行、新株予約権の
　　　　発行、自己株式の取得または処分、株式の消却、株式の分割・併合
　　　③定款の変更、事業の停止または廃止、新規事業の開始、重要な資産の処
　　　　分、重要な業務提携の開始または解消、倒産手続の申立
　　　④株式の公開およびその準備
　　　⑤代表取締役の変更
　　　⑥事業計画の重大な変更（株式公開予定時期の変更を含むがこれに限らな
　　　　い）
　　　⑦その他乙の経営に重要な影響を及ぼす事項

2　　　前項の重要事項のどれかについて書面通知を受け取ったとき、乙または丙は

甲の請求により甲の保有する株式（本株式を含むがこれに限らない。以下本条において「買取株式」という）を買い取るものとする。買受価格は、甲が買い取る株式の買受価格に、甲が指定する短期プライムレート（短期最優遇貸出金利）で計算した目的株式の支払期日から買受価格の支払日までの金利を加算した合計額とする。乙または丙は甲が指定する方法で、相互に合意した期間内に甲に買受価格を支払うものとする。乙または丙は本項に基づく譲渡について取締役会の承認、名義書換その他譲渡の実施に必要な措置をとる。

第4条（情報の開示）
1　乙は、甲に対し、次の通り重要な情報を開示しなければならない。
　①期末計算書類・附属明細書（決算期末後3ヵ月以内のできるだけ早い時期）および監査報告書（作成後直ちに）ならびに法人税申告書類（申告後直ちに）
　②四半期毎の決算書（各四半期が終わった翌月から45日以内）
　③事業計画・その変更計画および売上・利益予想（いずれも作成後直ちに）
　④その他乙の経営に重要な影響を及ぼす事項を決定する場合（この場合には第3条⑦の事前同意を要する。）、または乙の経営に重要な影響を及ぼす事実が発生した場合には直ちに甲に報告する。
2　前項の他、乙は、甲からの質問があるときは、乙または乙の親会社・子会社・関連会社の経営等に関して速やかに必要な情報を開示するものとする。
3　乙および丙は、甲に対し、本株式取得に関連して甲に提供した情報が正確であり、かかる情報が誠実に作成かつ提供されており、誤解を生じさせないために重要な事実が欠けていないことを表明し保証する。
4　本条記載の情報の開示において虚偽の情報もしくは事実があった場合または重要な情報もしくは事実の開示がなされない場合には、乙または丙は、甲の請求により甲の保有する株式（本株式を含むがこれに限らない。以下本条において「買取株式」という）を買い取るものとする。乙または丙は甲の要求する期間内に、合意された期間内に甲の株式を買い取るものとする。買受価格は、甲が買い取る株式の買受価格に、甲が指定する短期プライムレート（短期最優遇貸出金利）で計算した目的株式の支払期日から買受価格の支払日までの間の金利を加算した合計額とする。乙または丙は甲の要請を受理してから合意した期間内に、甲が指定する方法で甲に買受価格を支払うものとする。乙または丙は本項に基づく譲渡について取締役会の承認、名義書換その他譲渡の実施に必要な措置をとる。

第5条（守秘義務）
　甲、乙および丙は、本覚書に基づき相手方から受領した秘密情報については、相手方の事前の書面による同意がない限り、これを第三者へ漏洩してはならない。ただし、受領した時点で既に公知の情報、受領した者が守秘義務の負担なく既に保有

していた情報、受領した者の責任によらずに公知となった情報、受領した者がその後に第三者から法的義務に違反せずに入手した情報、甲が官公庁、証券取引所その他の公的機関に関連法令・規則等に基づき開示する場合、その他正当な理由があるときはこの限りでない。

第6条（株式の譲渡および公開努力義務）

1　甲は、本株式を含む乙の株式が公開された後は、その保有する乙の株式の全部または一部を、自由に売却または譲渡することができる。

2　乙は、できるだけ速やかに乙の株式を公開するよう最善の努力をするものとする。

3　乙の業績、株式市場の状況、その他の事由により公開することが著しく困難になったと甲が判断したとき、または公開が可能であると考えられるのに乙が公開のための手続を開始しないと甲が認めたときは、乙は甲の請求により甲の保有する株式（本株式を含むがこれに限らない。以下本条において「買取株式」という）を買い取るものとする。買受価格は、甲が買い取る株式の買受価格に、甲が指定する短期プライムレート（短期最優遇貸出金利）で計算した目的株式の支払期日から買受価格の支払日までの間の金利を加算した合計額とする。乙または丙は甲の要請を受理してから合意した期間内に、甲が指定する方法で甲に買受価格を支払うものとする。乙は本項に基づく譲渡について取締役会の承認、名義書換その他譲渡の実施に必要な措置をとる。

第7条（反社会勢力との無関係）

1　乙および丙は、甲に対し以下の事実を表明、保証し、約束する。

①過去・現在を問わず、乙および丙には暴力団等の反社会的勢力（以下「暴力団等」という）との間に、直接・間接を問わず、何らの資本・資金上の関係はなく、名目の如何を問わず、暴力団等に対し資金提供を行っていないし、今後も行う予定はないこと

②過去・現在を問わず、乙は暴力団等に属する者およびそれらと親しい間柄の者を、乙の役員等に選任しておらず、また、従業員としても雇用していないし、今後もその予定はないこと

③暴力団等は直接・間接を問わず、乙の経営に関与していないし、過去に関与したこともないないし、今後もその予定はないこと

④過去・現在を問わず、乙の株主には暴力団等に属する者およびそれらと親しい間柄の者はいないし、今後もその予定はないこと

2　前項の表明、保証および約束に反する事実が判明した場合には、乙または丙は甲の請求により甲の保有する株式（本株式を含むがこれに限らない。以下本条において「買取株式」という）を買い取るものとする。買受価格

は、甲が買い取る株式の買受価格に、甲が指定する短期プライムレート（短期最優遇貸出金利）で計算した目的株式の支払期日から買受価格の支払日までの間の金利を加算した合計額とする。乙または丙は上記の事実が判明したら早急に、甲が指定する方法で甲に買受価格を支払うものとする。乙または丙は本項に基づく譲渡について取締役会の承認、名義書換その他譲渡の実施に必要な措置をとる。

第8条（本契約の終了）
本契約は、以下の場合に終了する。
　① 本契約の重大な違反
　② 甲が乙の株主でなくなった場合

第9条（管轄）
本覚書に関する訴訟については、東京地方裁判所を管轄裁判所とする。

第10条（誠実協議）
本覚書に定めのない事項または疑義がある事項については、甲、乙、丙が誠実に協議して定める。
本覚書成立の証として、本書3通を作成し、甲、乙、丙各自1通を保有する。

平成　　年　　月　　日

（甲）　東京都港区白金 4-8-5

　　　　大久保　泉 

new address is 2575 Garcia Ave. (as of 7/17/2006)

（乙）　1288 Pear Street, Mountain View, California 94043-1432

Antara Biosciences, Inc.
最高経営責任者 Dr. Mark Labgold 

（丙）　東京都中央区銀座8-18-4

株式会社ユーラス・ゲノミックス
社長デーナ・イチノツボ 

# EXHIBIT C

# English Translation

PARTY A DOCUMENT NO. 2

# INVESTMENT CONTRACT

February 28, 2006

# Investment Contract

Izumi OKUBO (hereinafter referred to as "Party A"), Antara BioSciences Inc. (hereinafter referred to as "Party B") and Eurus Genomics Inc., Party B's sponsor in Japan (hereinafter referred to as "Party C"), have reached agreement upon the following matters pertaining to Party A's acquisition of common stock issued by Party B.

Article 1    (The Issuance and Take-up of the Shares)

Party B shall transfer *19,000* shares of common stock that it has issued at an issue price of 10,000 Yen per share (hereinafter referred to as the "Subject Shares") to Party A.

Article 2    (Payment Procedures)

Party A shall make payment via bank deposit transfer of the total issue price of _____ Yen for the shares that it takes up to the following special bank account designated by Party B by February 28, 2006, or by another settlement date separately agreed upon by Party A and Party B.

   Deposit Transfer Payee:    Bank of Tokyo-Mitsubishi UFJ
                              (Tokyo Head Office)
                              FAO Bank of Hawaii, Honolulu
                              A/C 653-0409596
                              FFC   Antara BioSciences Inc.
                              Attn: Treasury #244

Upon the request of Party A, Party B shall, at its own expense, deliver to Party A the share certificates representing the Shares in question within 30 days of receiving Party A's payment.

Article 3    (Decisions on Material Matters)

1    Party A shall receive written notification from Party B in regard to the following material matters.
   ①  Merger, transfer of business, exchange of shares, share transfer, company breakup, reduction of capital, dissolution
   ②  Issuance of new shares, issuance of ordinary bonds, issuance of bonds with warrants attached, issuance of warrants, repurchase or disposal of its own stock, cancellation of shares, stock split and reverse stock split.
   ③  Amendment of the Certificate of Incorporation, close or abolition of business, initiation of new business, disposal of all or substantially all assets, initiation or cancellation of major business tie-ups, filing for bankruptcy
   ④  Public offerings and preparations therefor
   ⑤  Change of Representative Director
   ⑥  Material changes in business plans (including but not limited to a change in the scheduled time for a public offering)
   ⑦  Other matters that will have a material effect on Party B's business

2   Upon receiving written notification with regard to any of the material matters under the preceding paragraph, Party B or Party C shall, at Party A's request, purchase the shares held by Party A (including but not limited to the Shares: hereinafter in this article referred to as the "Shares for Purchase"). The purchase price shall be taken as the total amount in which the interest for the period from the payment date for the Subject Shares to the date of payment of the purchase price calculated at the short-term prime rate (the most favorable short-term lending rate) designated by Party A has been added to the purchase price at which Party A has purchased the shares. Party B or Party C shall pay the purchase price to Party A within a mutually agreed upon period according to the method designated by Party A. With regard to a transfer pursuant to this clause, Party B or Party C shall see to the approval of the Board of Directors, the stock transfer and other measures necessary for the implementation thereof.

Article 4   (Disclosure of Information)

1   Party B must disclose material information to Party A as follows.
    ①  Fiscal year accounting documents and supplementary detailed statements (the earliest possible date within 3 months after the end of the fiscal year) and the audit report (promptly after preparation) as well as tax returns (promptly after filing)
    ②  Statements of account for each quarter (within 45 days from the month following that in which the respective quarter has ended)
    ③  Business plans and plans for the change thereof together with anticipated sales turnover and profit (all promptly after preparation)
    ④  In the event that a matter that will exert a material effect on Party B's business is determined (in which case prior consent under item ⑦ of Article 3 shall be required.), or in the event that an event that will have a material effect on Party B's business has occurred, it shall be reported immediately to Party A.

2   Aside from the preceding paragraph, when there is a question from Party A, Party B shall promptly disclose necessary information in regard to the business and the like of Party B or of Party B's parent company, subsidiary, or affiliate company.

3   Party B and Party C represent and warrant to Party A that the information provided to Party A in relation to the acquisition of the Shares is accurate, that said information has been prepared and provided in good faith, and that no material facts have been omitted in order to create a false impression.

4   In cases in which false information or facts have been included in the disclosure of information mentioned in this article, or in cases in which a disclosure of material information or facts has not been made, Party B or Party C shall, at Party A's request, purchase the shares held by the latter (including but not limited to the Shares: hereinafter to be referred to as the "Shares for Purchase" in this article). Party B or Party C shall purchase Party A's shares within an agreed-upon period [sic] within the term in which Party A makes the request. The purchase price shall be taken as the total amount in which the interest for the

period from the payment date for the Subject Shares to the date of payment of the purchase price calculated at the short-term prime rate (the most favorable short-term lending rate) designated by Party A has been added to the purchase price at which Party A has purchased the shares. Party B or Party C shall pay the purchase price according to the method designated by Party A within an agreed-upon period after acceptance of Party A's request. With regard to a transfer pursuant to this clause, Party B or Party C shall see to the approval of the Board of Directors, the stock transfer and other measures necessary for the implementation of the transfer.

Article 5         (Obligation of Confidentiality)

Party A, Party B and Party C may not make any disclosure to any third party with regard to confidential information received from another Party pursuant to this Memorandum unless it has the prior written consent of the other Party. However, this shall not apply to information that had already become public at the time at which it was received, to information that the person who received it had already possessed without bearing the obligation of confidentiality, to information that has become public for reasons not attributable to the person who received it, to information that the person who received it subsequently obtained from a third party without violating legal obligations, in cases in which Party A makes disclosures to government administration offices, securities exchanges and other public agencies pursuant to relevant laws, regulations and the like, and when other legitimate reasons exist.

Article 6         Transfers of Shares and the Obligation of Publicly Offering Efforts

1    After shares in Party B, including the Shares, have been registered, Party A may freely sell or transfer all or part of its shares of stock of Party B.
2    Party B shall exert its best efforts to register shares of stock of Party B as soon as possible.
3    When Party A has judged that it has become extremely difficult for Party B to register owing to its business performance, stock market conditions or for other reasons, or when Party A has observed that even though it is considered that Party B is able to register, it is not initiating the procedures for doing so, Party B shall purchase the shares that Party A holds (including but not limited to the Shares in question: hereinafter to be referred to in this article as the "Shares for Purchase") at Party A's request. The purchase price shall be taken as the total amount in which the interest for the period from the payment date for the Subject Shares to the date of payment of the purchase price calculated at the short-term prime rate (the most favorable short-term lending rate) designated by Party A has been added to the purchase price at which Party A has purchased the shares. Party B or Party C shall pay the purchase price according to the method designated by Party A within an agreed-upon period after acceptance of Party A's request. With regard to a transfer pursuant to this clause, Party B or Party C shall see to the approval of the Board of Directors, the stock transfer and other measures necessary for the implementation of the transfer.

Article 7  (Lack of Relationship with Antisocial Forces)

1  Party B and Party C represent, warrant, and covenant the following facts to Party A.
   ①  That Party B and Party C have not, either now or in the past, had any capital or funding relationship, either direct or indirect, with gangster organizations or other antisocial forces (hereinafter referred to as "Gangs, etc."), that they are not providing funds to Gangs, etc. under any pretext whatever, and that they do not have any intention of doing so in the future
   ②  That Party B has not, either now or in the past, appointed persons belonging to Gangs, etc. or persons having a close relationship with them as its officers, or hired them as employees, and that it does not have any intention of doing so in the future
   ③  That Gangs, etc. do not participate either directly or indirectly in Party B's business, that they have not done so in the past, and that there is no prospect thereof in the future
   ④  That there have not been and are not now among the shareholders of Party B any persons who belong to Gangs, etc. or persons who have a close relationship with them, and that there is no prospect thereof in the future

2  In the event that any facts are confirmed that contradict the representations, warrants, and covenants under the preceding paragraph, Party B or Party C shall, at Party A's request, purchase the shares held by Party A (including but not limited to the Shares in question: hereinafter referred to in this article as "Shares for Purchase"). The purchase price shall be taken as the total amount in which the interest for the period from the payment date for the Subject Shares to the date of payment of the purchase price calculated at the short-term prime rate (the most favorable short-term lending rate) designated by Party A has been added to the purchase price at which Party A has purchased the shares. If the above facts are confirmed, Party B or Party C shall urgently pay the purchase price to Party A according to the method designated by Party A. Party B or Party C shall see to the approval of the Board of Directors, the stock transfer and other measures necessary for the implementation of the transfer.

Article 8  (Termination of the Contract)

This Contract shall be terminated under the following circumstances.
①  A material breach of this Contract
②  In the event that Party A has ceased to be a shareholder of Party B

Article 9  (Jurisdiction)

The Tokyo District Court shall be the court with jurisdiction regarding lawsuits related to this Memorandum.

Article 10    (Good Faith Consultations)

Party A, Party B and Party C shall make decisions in regard to matters not covered in this Memorandum or to matters about which there are doubts through good faith consultations.

In witness whereof, this instrument has been executed in 3 counterparts, with Party A, Party B and Party C each retaining one counterpart.

This ____ Day of _____, 20___

    (Party A)    *Izumi OHKUBO*
                     *4-8-5 Shirokane, Minato-ku, Tokyo*

[Seal of OHKUBO]

    (Party B)    Dr. Marc Labgold
                     Chief Executive Officer
                     Antara BioSciences, Inc.
                     1288 Pear Street, Mountain View, California   94043-1432

[Seal]

    (Party C)    Dana Ichinotsubo
                     President
                     Eurus Genomics Inc.
                     8-18-4 Ginza, Chuo-ku, Tokyo

[Seal]