1  Squire, Sanders & Dempsey L.L.P.
   Nathan Lane III (State Bar # 50961)
2  Joseph A. Meckes (State Bar # 190279)
   One Maritime Plaza, Suite 300
3  San Francisco, California  94111-3492
   Telephone:   +1.415.954.0200
4  Facsimile:   +1.415.393.9887
   Email:      NLane@ssd.com
5              JMeckes@ssd.com

6  Attorneys for Plaintiff
   IZUMI OHKUBO

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11 IZUMI OHKUBO,                          Case No. C07 06354 JW

12           Plaintiff,                   **PLAINTIFF'S OPPOSITION TO MOTION
                                          TO DISMISS COMPLAINT**
13      vs.
                                          Date:  April 14, 2008
14 ANTARA BIOSCIENCES, INC.,              Time: 9 a.m.
   MARC R. LABGOLD and DANA
15 ICHINOTSUBO,                           Hon. James Ware

16           Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ...............................................................................................1

III.  ARGUMENT ...................................................................................................3

A.    The Jurisdictional Clause in the Investment Contract is Not a Forum ...............................
      Selection Agreement ...............................................................................3

B.    Forum Non Conveniens .............................................................................6

    1.    *Forum Non Conveniens* Standard .................................................................7

    2.    Defendants Have Not Satisfied Burden of Proving That Japan is an Adequate
          Alternative *Forum* ................................................................................7

    3.    Private Interest Factors Strongly Favor Litigation in the United States .........................8

        a.    The Parties and Witnesses Almost All Reside in the United States and The Various
              Sources of Evidence are Here and Cannot Be Compelled to Provide Testimony in
              Japan ........................................................................................8

            (1)    Fraud Requiring Evidence of Antara's Financial Condition .............................9

            (2)    Fraudulent Issuance of Shares by Defendants to Themselves and to
                   Akolea LLC ............................................................................11

            (3)    Fraudulent False Promises in Investment Contract .......................................12

            (4)    Defendants Have Failed to Show That a Single Japanese Witness is Likely to
                   Have Information Relevant to this Case .................................................13

        b.    Because Antara is Headquartered in Northern California, this Court is Convenient to
              All of the Parties ......................................................................14

        c.    Location of Defendants, Witnesses and Evidence Will Make Trial in This Court
              Easier, More Expeditious Less Expensive ...............................................16

    4.    Public Interest Factors Weigh Heavily Against Dismissal ..........................................18

IV.   CONCLUSION ...............................................................................................19

      APPENDIX ..............................................................................................*post*

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Arno v. Club Medical Inc.*, 22 F.3d 1464 (9th Cir. 1994) ............................................................17

*Asarpe v. JDS Uniphase*, 2004 U.S.Dist. LEXIS 24270 (N.D.Cal. July 24, 2004).......................8

*Banco Nominees, Ltd. v. Iroquois Brands, Ltd.*, 748 F.Supp. 1070(D. Del. 1990) .....................15

*Caldas & Sons v. Willingham*, 17 F.3d 123 (5th Cir. 1994) ...........................................................6

*Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983) ......................................................................7

*Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231 (11th Cir. 1985)...........................................5

*City of New York v. Pullman, Inc.*, 477 F.Supp. 438 (S.D.N.Y. 1979)............................................4

*Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762 (9th Cir. 1987)....................................................4

*El-Fadl v. Central Bank of Jordan*, 75 F.3a 668 (D.C.Cir. 1996)...................................................8

*First Franklin Finance Corp. v. Mortgage Academy*, 2006 U.S.Dist. LEXIS 76109 (N.D. Cal. Oct. 5, 2005)..........................................................................................................................6

*Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*, 58 F.Supp.2d 925 (N.D. Ill 1999) .....................5

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir. 1987)..............................4, 6

*K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494 (10th Cir. 2002)............................................................................................................................5, 6

*Koresco v. Real Networks, Inc.*, 291 F.Supp.2d 1157 (E.D. Cal. 2003) ........................................3

*Leetsch v.  Freedman*, 260 F.3d 1100 (9th Cir. 2001) ....................................................................7

*Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628 (3d Cir. 1989)................................... 15, 18

*Lueck v. Sundstrand Corp.*, 236 1137 (9th Cir. 2001) .............................................. 7, 8, 9, 15, 18

*Mercier v. Sheraton, International, Inc.*, 935 F.2d 419 (1st Cir. 1991)...........................................8

*N. Cal. District Council of Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034 (9th Cir. 1995) ..............................................................................................................................4

*Piper Aircraft v. Reyno*, 454 U.S. 235 (1981) ...............................................................................8

*Ravelo Monegro v. Rosa*, 211 F.3d 509 (9th Cir. 2000) ...........................................................7, 15

*Tuazon v. RJ Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006).............................. 13, 15, 19

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th  Cir. 2001)...................................16

-ii-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

**TABLE OF AUTHORITIES (Cont.)**

**Page**

**FEDERAL STATUTES**

28 U.S.C. sec. 1332..................................................................................................14

**STATE STATUTES**

Cal. Civ. Code sec. 1646 ........................................................................................17

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

## I.    __INTRODUCTION__

Defendants' Motion to Dismiss plaintiff Izumi Ohkubo's Complaint is meritless. First, contrary to Defendants' arguments, there is *no mandatory forum selection* provision in the parties' February 28, 2006 Investment Contract. Ninth Circuit law provides in no uncertain terms that, unless the contract contains express language making jurisdiction exclusive, a provision calling for jurisdiction in a particular court must be interpreted as permitting jurisdiction to lie in other courts as well. Here, because the relevant contractual provision (which was drafted by defendant Antara Biosciences, Inc. ("Antara")), simply provides that the Tokyo District Court will have jurisdiction over the parties' disputes, it cannot be interpreted as a mandatory forum selection provision.

Defendants motion to dismiss for *forum non conveniens* fares no better. Nearly all of the evidence of Defendants' misconduct and at least 20 witnesses--including the Defendants themselves--are located in California or the United States. Given that Antara was headquartered in a 42,000 square foot facility only a few minutes away in Mountain View, California, Defendants cannot argue that litigation in this Court is inconvenient to them or to former Antara employees who will be witnesses. Moreover, Defendants' arguments that critical evidence can only be obtained in an action in Japan is also illusory. The single Japanese witness identified by Defendants has readily agreed to provide testimony in this Action if requested to do so by the Defendants. Further, Defendants offer no basis for concluding that the law of Japan will apply to this dispute or that there is any other reason why this case should be dismissed in favor of Japan. Accordingly, Defendants' Motion to Dismiss should be denied.

## II.    __BACKGROUND__

In early 2006, defendants Marc R. Labgold ("Labgold") and Dana Ichinotsubo ("Ichinotsubo"), recognizing the difficulties of raising large sums of money in the United States for Antara, the California-based biotech start-up company they had founded, decided to seek investors in Japan. Cmplt. ¶10. To facilitate their efforts, they prepared various written materials for prospective investors. Those materials, including a business plan and related summary,

1  glowingly touted Antara's current capitalization and market prospects, and promised a rich initial

2  public offering in a year or less.  Cmplt. ¶¶10-12, 21, Ex. A, B.  The problem was that the

3  Defendants knew the statements were false, but made them nonetheless to deceive foreign

4  investors into providing funds.

5       In reliance on Defendants' false representations and promises, plaintiff Izumi Ohkubo

6  invested ¥190,000,000 in Antara and expected 19,000 shares of its common stock pursuant to a

7  an Investment Contract that Antara had drafted.  Cmplt. ¶¶13,14, Declaration of Izumi Ohkubo

8  ("Ohkubo Decl.") at ¶4.  Soon after he contributed the funds, when Mr. Ohkubo sought to obtain

9  documents and information promised to him in the Investment Contract, he learned that Antara

10  and its founders had never intended to honor the promises they had made.  Cmplt. ¶17.  After

11  unsuccessful efforts to have Antara honor its promises to provide him with relevant financial

12  information and, failing this, to repurchase his shares as agreed, Mr. Ohkubo brought this Action

13  to enforce the Investment Contract and to obtain damages from the Defendants that Mr. Ohkubo

14  has suffered as a result of their fraud.

15       In response to Mr. Ohkubo's Complaint, Defendants have moved to dismiss the

16  Complaint in favor of future litigation in Japan.  While the Defendants have agreed to submit to

17  personal jurisdiction in Japan, they have not agreed to pay any ultimate judgment, thus, inevitably

18  requiring follow-on litigation in the United States.  Declaration of Kenichiro Kawada ("Kawada

19  Decl.") ¶8.  Nor will litigation in Japan be more efficient in light of the litigation now pending

20  there against Eurus Genomics; that case will likely to be concluded by September 2008 before

21  any new case in Japan against Antara, Labgold and Ichinotsubo could reasonably be expected to

22  begin.  *Id.* ¶6.  Moreover, Eurus Genomics appears to be taking a diametrically different position

23  from that asserted by Defendants here. While Defendants here appear to embrace the Investment

24  Contract without reservations, Eurus Genomics contends in Japan that not all of the provisions of

25  the Investment Contract are enforceable.  *Id.* at ¶¶3, 4.  Far from insisting that Mr. Ohkubo's

26  claims be litigated only in Japan, Eurus has argued to the Tokyo District Court that information

27  about Antara can only be made available in the Northern California litigation – Antara's home

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

1    jurisdiction.  *Id.*[1]

2          The key issues to be litigated in this case revolve around the financial condition of Antara

3    both before and after Mr. Ohkubo's investment was made.  Documents and witnesses relevant to

4    these issues are located in the United States, principally in the Northern District of California,

5    where Antara was headquartered.  Mr. Ohkubo will come to the United States for a deposition if

6    requested and for trial if necessary.  Ohkubo Decl. ¶2.  The only witness in Japan that defendants

7    identify is Toshiaki Suzuki, who was acting at all times on behalf of the defendants.  Cmplt. ¶10;

8    Ohkubo Decl. ¶6.  Mr. Suzuki has agreed to testify in this action if the Defendants request that he

9    do so.  Declaration of Toshiaki Suzuki ("Suzuki Decl.") at ¶2.  In short the most relevant

10   evidence and most important witnesses are located here, but, as shown by the declarations

11   submitted herewith, any relevant evidence in Japan will be readily available to the defendants.

12   **III.    ARGUMENT**

13          **A.    The Jurisdictional Clause in the Investment Contract is Not a Forum
                    Selection Agreement.**

14

15          Article 9 of the Investment Contract (the "Jurisdictional Clause") is not a mandatory

16   forum selection clause.  The Jurisdictional Clause provides simply that, "The Tokyo District

17   Court shall be the court with jurisdiction regarding lawsuits related to this Memorandum."

18   Cmplt., Ex. C.  Because the Jurisdictional Clause does not expressly provide for exclusive

19   jurisdiction in the Tokyo District Court, controlling Ninth Circuit precedent requires this Court to

20   construe the Jurisdictional Provision as simply permitting the Tokyo District Court to exercise

21   jurisdiction over the parties, not requiring all lawsuits be brought there.[2]

22          The Ninth Circuit has held in no uncertain terms that, "[t]o be mandatory, a [forum

23   selection] clause must contain language that clearly designates a forum as the exclusive one."

24

25   [1] Defendant Antara appears now to be nothing more than a shell corporation with no remaining
     business operations.  Declaration of Joseph A. Meckes ("Meckes Decl.") ¶4, Declaration of
26   Shirley Heringer ¶¶2-6.

27   [2] In diversity cases, federal law applies to the interpretation of forum selection clauses.  *Koresco
     v. Real Networks, Inc.,* 291 F.Supp. 2d 1157, 1162 (E.D. Cal. 2003).  Notably, although there is
28   controlling Ninth Circuit authority directly relevant to Defendants' Motion, Defendants ignore
     that authority.

-3-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1    *N. Cal. Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co.,* 69 F.3d 1034 (9th Cir.

2    1995).  **"**When only jurisdiction is specified the clause will generally not be enforced without

3    some further language indicating the parties' intent to make jurisdiction exclusive." *Docksider,*

4    *Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 764 (9th Cir. 1989).

5            In the seminal case *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75 (9th Cir.

6    1987), the Ninth Circuit interpreted the following provision as being a permissive, rather than

7    mandatory, forum selection provision:  "The courts of California, County of Orange, shall have

8    jurisdiction over the parties in any action at law relating to the subject matter or the interpretation

9    of this contract."  The court reasoned:

> [T]he plain meaning of the language is that the Orange County courts
> shall have jurisdiction over this action. The language says nothing
> about the Orange County courts having exclusive jurisdiction. The
> effect of the language is merely that the parties consent to the
> jurisdiction of the Orange County courts. Although the word "shall"
> is a mandatory term, here it mandates nothing more than that the
> Orange County courts have jurisdiction. Thus, Supreme cannot object
> to litigation in the Orange County Superior Court on the ground that
> the court lacks personal jurisdiction. Such consent to jurisdiction,
> however, does not mean that the same subject matter cannot be
> litigated in any other court. In other words, the forum selection clause
> in this case is permissive rather than mandatory.

18   *Id*. at 77.  The Ninth Circuit further noted that, "in cases in which forum selection clauses have

19   been held to require litigation in a particular court, the language of the clauses clearly required

20   *exclusive* jurisdiction." *Id.* (emphasis in original).  As another court has succinctly put it, "an

21   agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction

22   elsewhere unless it contains specific language of exclusion." *City of New York v. Pullman, Inc.,*

23   477 F.Supp. 438, 442 n. 11 (SDNY 1979)

24           Here, the Jurisdictional Clause contains no language excluding this Court or any other

25   from exercising jurisdiction or requiring that venue shall be mandatory elsewhere. *Cf. Docksider,*

26   875 F.2d at 764.  Nowhere do Defendants even bother to explain how the Jurisdictional Clause

27   can be interpreted as a mandatory.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

-4-

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

1    If Antara (as drafter) had intended jurisdiction in the Tokyo District Court to be exclusive,

2    it knew how to draft an appropriately worded agreement.[3]   In contrast to the Investment Contract,

3    an agreement between Antara and a third party required:

4          This Agreement shall be governed by, and construed in accordance
5          with the laws of Japan.  The Tokyo District Court shall have
           *exclusive* jurisdiction over any and all disputes arising in
6          connection with this Agreement.

7    Kawada Decl. ¶5, Ex. A (emphasis added).   Antara's decision to omit from the Investment

8    Agreement any language unambiguously denying jurisdiction to courts other than the Tokyo

9    District Court shows that jurisdiction in Tokyo was permissive and not mandatory.  *See K & V*

10   *Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 499-500

11   (10th Cir. 2002) (holding that contract with third party providing for exclusive jurisdiction

12   weighed in favor of finding that provision was permissive where similar language was not

13   included in clause at issue).

14   Courts have held that far stronger provisions were not exclusive where they did not

15   contain *explicit* language saying that jurisdiction is exclusive or expressly laying venue in a

16   particular court.  For example, in *K & V Scientific,* 314 F.3d at 496-500, the court found that the

17   following provision was not a mandatory:

18         Jurisdiction for all and any disputes arising out of or in connection
19         with this agreement is Munich. All and any disputes arising out of
           or in connection with this agreement are subject to the laws of the
20         Federal Republic of Germany.

21   The court noted that it had "little trouble concluding that the forum selection clause at issue is

22   permissive. In particular, the clause refers only to jurisdiction, and does so in non-exclusive terms

23   (e.g., there is no use of the terms 'exclusive,' 'sole,' or 'only')."  *Id.* at 500.[4]

24   ─────────────────────

[3] It is notable that Antara's CEO, Marc Labgold PhD. is a highly sophisticated and highly
25   educated attorney who knew or should have known the legal requirement for an exclusive forum
     selection provision.  *See generally* Labgold Decl. ¶2 (Dkt. 10-2).

26   [4] Other courts have interpreted similar provisions as permissive:  For example, the Eleventh
     Circuit held that a provision stating that "[t]he place of jurisdiction is Sao Paulo/Brazil" was
27   permissive and not mandatory.  *Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1232 (11th
     Cir. 1985).  Likewise, a provision stating that "[t]he laws and courts of Zurich are applicable" was
28   held by the Fifth Circuit to be permissive because it did not contain a specific terms providing

-5-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

1    Finally, even if one could torture the Jurisdictional Clause to imply that only the Tokyo

2    District Court can hear the parties dispute, then the clause is ambiguous since it is subject to

3    competing constructions.  "Under Ninth Circuit law, the court is not empowered to interpret an

4    ambiguous forum selection clause, it must reject it to the extent it does not 'clearly designate' a

5    particular forum as the exclusive one." *First Franklin Fin. Corp. v. Mortgage Acad.,* 2006 U.S.

6    Dist. LEXIS 76109, *6 (N.D. Cal. Oct. 5, 2005) *quoting  N. Cal. Dist. Council of Laborers,* 69

7    F.3d at 1037.   This is consistent with the "fundamental principle of contract interpretation" that

8    an ambiguous forum selection clause, like any other contract provision, is to be interpreted

9    against the drafter.  *Hunt Wesson,* 817 F.2d at 78, *see also K &V Scientific Co., Inc.* 314 F.3d at

10   500-01 (Where clause is capable of being construed as either permissive or mandatory, the clause

11   must be construed against the drafter).

12   Accordingly, this Court *may not* interpret the Jurisdictional Clause as requiring litigation

13   be brought only in the Tokyo District Court.  Instead, this Court may only interpret the

14   Jurisdictional Clause simply as permitting jurisdiction in Japan, not prohibiting the parties from

15   bringing cases elsewhere.

16   **B.    Forum Non Conveniens**

17   Defendants' motion to dismiss under the doctrine of *forum non conveniens* must also be

18   denied because Defendants have not satisfied their burden of showing (1) that an adequate

19   alternative forum exists for resolution of this dispute or (2) that private and public factors favor a

20   trial in Japan.  Defendants' only grounds for seeking dismissal is that a single witness resides in

21   Japan and, that the Investment Contract is written, and may have been discussed, in Japanese.

22   Defendants also rely on the incorrect notion that there is a mandatory forum selection clause, as

23   well as the unfounded notion that Japanese law would apply.  Given that the single relevant

24   Japanese witness identified by the Defendants has agreed to testify in this Action, and given the

25   high standard Defendants must meet to satisfy their burden, Defendants have fallen far short of

26

27   that jurisdiction in Zurich was sole or exclusive.  *Caldas & Sons v. Willingham,* 17 F.3d 123, 127

28   (5th Cir. 1994), *see also, eg.,* Hull 753 Corp. v. Elbe Flugzeugwerke GmbH, 58 F.Supp.2d 925,
     926 (N.D. Ill. 1999) ("the place of jurisdiction shall be Dresden" held to be permissive).

-6-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

justifying dismissal under the doctrine of *forum non conveniens*.

### 1.    *Forum Non Conveniens* Standard

In considering a *forum non conveniens* motion, "the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of the private and public interest facts favor dismissal." *Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1142-43 (9th Cir. 2001). "[A] plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors **strongly** favor a trial in a foreign country." *Id.* at 1145 (Emphasis added).

"The standard to be applied to a motion for dismissal on the ground of *forum non conveniens* is whether defendants have made a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or non-existent." *Ravelo Monegro v. Rosa,* 211 F.3d 509, 514 (9th Cir. 2000) quoting *Cheng v. Boeing Co.,* 708 F.2d 1406 (9th Cir. 1983). Although a foreign plaintiff is entitled to less deference than a plaintiff who has chosen his home forum, "less deference is not the same thing as no deference." *Lueck,* 236 F.3d at 1143. To overcome the deference to even a foreign plaintiff's chosen forum, the defendant must show that trial in the plaintiffs' chosen forum will be "unnecessarily burdensome for the defendant or the court." *Id.* at 1145.

Dismissal on the ground of *forum non conveniens* is an "exceptional tool to be employed sparingly." *Ravelo Monegro,* 211 F.3d at 514. It is "not a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Id.* Here, Defendants have not even come close to satisfying these high standards.

### 2.    Defendants Have Not Satisfied Burden of Proving That Japan is an Adequate Alternative *Forum*

The Ninth Circuit has repeatedly emphasized that "the defendant bears the burden of proving the existence of an adequate alternative forum." *See e.g., Lueck*, F.3d at 1143; *Cheng*, 708 F.2d at 1411. Although the Defendants have agreed to submit to personal jurisdiction in Japan, the Ninth Circuit recently held that "amenability to service of process . . . is not the only determinant of a forum's adequacy. The foreign court's jurisdiction over the case and competency to decide the legal questions involved will also be considered." *Leetsch v.*

-7-

1  *Freedman*, 260 F.3d 1100, 1003 (9th Cir. 2001).  Here, Defendants' sole argument is that a case

2  based on "similar facts" is pending between Mr. Ohkubo and Eurus Genomics.[5]  Defendants'

3  Memorandum of Points and Authorities ("Mot.") at 7:26 -8:7.  Defendants fail to offer any

4  evidence to show that Mr. Ohkubo's fraud claims against Ichinotsubo and Labgold as individuals

5  would be cognizable in Japan.  Accordingly, because Defendants have not met their threshold

6  burden, their motion must be denied. [6]

7          **3.**     **Private Interest Factors Strongly Favor Litigation in the United States**

8        As this Court recently noted, "the central focus of the *forum non conveniens inquiry* is

9  convenience."  *Asarpe v. JDS Uniphase,* 2004 U.S. Dist. LEXIS 24270 at *8 (N.D.Cal. July 24,

10  2004) (quoting *Piper Aircraft v. Reyno,* 454 U.S. 235, 249 (1981).  To begin this inquiry, the

11  courts consider various private interest factors focusing on the convenience of the plaintiff's

12  chosen forum, including the location of witnesses and evidence, the cost of bringing willing

13  witnesses to trial, whether unwilling witnesses can be compelled to testify, the convenience to the

14  parties, and other factors that may affect the expeditious resolution of the parties' dispute.  *Lueck*,

15  236 F.3d at 1145.  Each of these private interest factors weighs strongly in favor of litigation in

16  the United States.

17          **a.**     **The Parties and Witnesses Almost All Reside in the United States and The Various Sources of Evidence are Here and Cannot Be Compelled to Provide Testimony in Japan**

19        The location of key witnesses and evidence and the cost of transporting them to the

20  proposed alternative forum all weigh against dismissal.  Here, virtually all of the witnesses with

---

[5] Mr. Ohkubo objects to paragraphs 8 of the Declaration of Marc Labgold (Dkt. 10-2) and to paragraph 11 of the Declaration of Dana Ichinotsubo (Dkt. 10-3) as not being based on personal knowledge and hearsay.

[6] Courts routinely deny *forum non conveniens* motions where, as here, the defendant fails to provide any declaration or other evidence of the adequacy of the proposed alternative forum or where such evidence is sparse.  For example, in *Mercier v. Sheraton, Int'l., Inc.,* 935 F.2d 419, 427 (1st Cir. 1991), the Circuit Court reversed a district court's finding that Turkey was an adequate alternative forum for plaintiff's claim because defendants' affidavit contained "substantial gaps" and thus did not satisfy defendants' burden.  Similarly, in *El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 677 (D.C. Cir. 1996) the Circuit Court reversed the district court's finding that Jordan was an adequate alternative forum because a declaration by a Jordanian attorney proffered by the defendants had failed to demonstrate that Jordanian courts would have jurisdiction over the types of claims at issue.

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

1   knowledge relevant to Mr. Ohkubo's claims, and almost all of the evidence, is in the United

2   States--primarily within commuting distance of this Court.  As a company that was headquartered

3   in Mountain View, California, almost all of Antara's former management team, its accounting

4   staff and several key employees currently reside, or until recently resided, in Northern California.

5   Antara's records, as well as records in the possession of former Antara employees, are also likely

6   to be in California.  Other witnesses, including Antara's financial consultants and attorneys, will

7   also be in California or at least in the United States.  Because most of these witnesses cannot be

8   compelled to attend trial in Japan and because the cost of transporting these multiple witnesses to

9   Japan for trial will be extraordinarily high (even if they are willing to go), these private interest

10  factors weigh heavily against dismissal. [7]

11              **(1)    Fraud Requiring Evidence of Antara's Financial Condition**

12          Of particular relevance to Mr. Ohkubo's claims is the financial status of Antara, both

13  before and after Mr. Ohkubo made his investment in Antara.  For example, Defendants falsely

14  informed Mr. Ohkubo that the founders of the company, along with the "Clinical Laboratories of

15  Hawaii (Dr. Park)," had invested $10 million of their own funds as start-up capital, that the

16  company had a valuation of "approximately $350,000,000," and that they had had "[p]reliminary

17  discussions with Wallstreet market-makers" that had caused them to believe that they "expected

18  IPO value on the order of US$750 million." Cmplt. ¶21.  Obviously, Mr. Ohkubo is entitled to

19  evidence showing that the purported investments were never made as represented and that

20  Defendants never had a reasonable basis for projecting such inflated values.  Also, Mr. Ohkubo

21  has alleged that the Defendants falsely promised to repurchase his shares upon the occurrence of

22  various events.  *Id.* ¶¶17, 23.  If, as Mr. Ohkubo is informed and believes, Antara did not have,

23  and was not expected to have, the financial wherewithal to repurchase Mr. Ohkubo's shares, this

24  will be critical in proving that this promise was fraudulent because it was made without any

25  intention of performing it.

26          Evidence from various individuals and entities in California and the United States will be

27

28  [7] A list of individuals and entities located in California and the United States from whom Mr.
    Ohkubo will require testimony and discovery is included as an Appendix to this memorandum.

-9-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

1    instrumental in proving that Defendants various misrepresentations were fraudulent.  Obviously,

2    former members Antara's management and accounting team will have evidence of, for example,

3    the financial health of the company, including whether Labgold, Ichinotsubo, the Clinical

4    Laboratories of Hawaii or "Dr. Park"[8] ever invested any money in Antara and, if so, on what

5    terms.  Former employees of Antara will also likely have knowledge of, among other things, any

6    valuations that had been conducted and any communications they had with the individual

7    Defendants about such matters.  They may have also received financial information directly

8    relevant to whether Antara ever believed it would be in a position to repurchase Mr. Ohkubo's

9    shares--as Defendants promised to do.

10          Former management personnel that Mr. Ohkubo expects will have relevant evidence

11   include:

12          • Antara's former chief operating officer George Jokhadze, who resides in
13             Mountain View, California;

14          • Antara's former controller Joelle Wada, who lives in Cupertino,
               California;

15          • Antara's former director of operations Lavonne Young, who resides in
16             Palo Alto, California;

17          • Antara's former Executive Vice President of IP and Legal Affairs Sarah
               Brashears, who until August 2007 resided in Mountain View California
18             and now lives in Denver, Colorado;.

19          • Antara's former Director of Information Technology Robert Gordon, who
               resides in San Jose, California; and

20          • Antara's former Director of Business Development Chandu Ammini, who
               resides in Mountain View, California[9]

21

22   Meckes Decl., ¶¶2, 3.

23

---

24   [8] Mr. Ohkubo is informed and believes that "Dr. Park" is M. S. Park, M.D. who is shown on the
     Clinical Laboratories of Hawaii website as its president and chief executive officer.  Meckes
25   Decl., Ex. C.

26   [9] Other individuals identified as "officers" or "key employees" by Antara included Antara vice
     president Mark Trulson of San Jose, California, Mark Kozlowski of Mountain View, California,
     Peter Lobban of Los Altos, California, Bradley Scherer of Saratoga Springs, New York (formerly
27   of Mountain View, California) and Sei Jong Lee of Honolulu, Hawaii (formerly of Sunnyvale,
     California).  Meckes Decl. ¶¶2, 3.  Mr. Ohkubo expects that he will need discovery or trial
28   testimony from all of these individuals as well.

-10-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1    Mr. Ohkubo will also need to subpoena Antara's, Labgold's and Ichinotsubo's banking

2    and financial records, as well as financial records for the Clinical Laboratories of Hawaii and Dr.

3    M. S. Park, which will be in the possession of financial institutions and accountants in United

4    States. For example, Mr. Ohkubo is aware that Antara had an account with the Honolulu-based

5    Bank of Hawaii, the records of which likely contain evidence necessary to show Defendants'

6    misrepresentations. *See* Cmplt. Ex. C at Art. 2. Presumably, the other Defendants, the Clinical

7    Laboratories of Hawaii and Dr. Park also keep bank accounts in the United States, which will

8    subject to subpoena in this Action, but which cannot be compelled in Japan. If Labgold,

9    Ichinotsubo, the Clinical Laboratories of Hawaii and/or Dr. Park did not provide start-up capital

10   as Defendants stated, this will be apparent from their personal financial records as well as records

11   of Antara's accounts, which records could not compelled by a court sitting in Japan.

12   It is also notable that Labgold's and Ichinotsubo's alleged investments in Antara were

13   supposedly made through the "Labgold Trust" and the "Ichinotsubo Family Trust." Cmplt. ¶12.

14   To the extent that either of these entities have records of investments in Antara, this information

15   will be critical to Mr. Ohkubo's case and might not be compelled by a Japanese court.

16   To the extent that there were actually "preliminary discussions with Wallstreet market

17   makers" as Defendants informed Mr. Ohkubo in the Business Plan (which discussions led to the

18   pie-in-the-sky valuations stated there), those so-called "market makers" will also have highly

19   relevant evidence--evidence that could not be obtained in Japan. To the extent Defendants claim

20   that, in fact, there were valuations to support the predictions in the Business Plan, testimony will

21   also be required from any consultants or economists who were involved in preparing those

22   valuations.

23        **(2)    Fraudulent Issuance of Shares by Defendants to Themselves**
                   **and to Akolea LLC**

24

25   The defendants also fraudulently omitted to inform Mr. Ohkubo that, at the time Mr.

26   Ohkubo purchased shares for approximately $100 per share, they planned to issue vast quantities

27   of shares to themselves and others, including a Hawaiian company named Akolea LLC, for a

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1   mere $0.10 per share without disclosing their self dealing.  Cmplt. at ¶22.  The same "Dr. Park"

2   whom Defendants claimed had invested start-up capital in Antara through the Clinical

3   Laboratories of Hawaii also appears to be an officer (along with his family members) in Akolea

4   LLC.  Meckes Decl. ¶5.  Information regarding the terms of these sweetheart deals will likely be

5   in the possession of Dr. Park and Akolea LLC as well as from the former Antara employees listed

6   above.

7                              **(3)    Fraudulent False Promises in Investment Contract**

8           Mr. Ohkubo has alleged that the Investment Agreement contained several promises that

9   the defendants did not intend to keep when those promises were made.  Cmplt. ¶23.  For example,

10  although the Investment Agreement promised common stock, the Defendants appear to have

11  planned all along to deliver non-voting shares, even though they did not inform Mr. Ohkubo of

12  this fact.  *Id.*  Also, although the Investment Agreement required various notices and financial

13  records to be provided, the Defendants almost contemporaneous acts made it clear that these

14  promises were made to induce Mr. Ohkubo's investment without any intention to perform them.

15  *Id.*

16          Information regarding the defendants false promises can be obtained only in the United

17  States.  Certainly, Antara's former management and accounting staff will know whether Antara

18  *ever* contemplated providing financial statements to Mr. Ohkubo or other investors (subsequent

19  communications from Antara executive vice president Sarah Brashears suggests strongly that it

20  did not).  *See* Meckes Decl. Ex. A.  Antara's former management and accounting staff will also

21  likely have evidence relevant to Defendants' decision to provide Mr. Ohkubo non-voting shares

22  when undifferentiated common stock had been promised.  Evidence relating to Mr. Ohkubo's

23  claims will also be in the possession of the Washington law firm Patton Boggs, LLP, which

24  represented Antara and which does business almost exclusively in the United States.[10]  *See*

25  Cmplt. Ex. A at 7-9.

26  ─────────────────────

27  [10] Patton Boggs was identified in the Business Plan as Antara's regulatory and intellectual
    property counsel and is also Labgold's firm.  Cmplt. Ex. A at 7-9.  Except for a six-attorney
28  office in Qatar, all Patton Boggs offices are in the United States.  *See*
    http://www.pattonboggs.com/locations/.

                                              -12-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

1

2

**(4)    Defendants Have Failed to Show That a Single Japanese
Witness is Likely to Have Information Relevant to this Case**

3       In contrast to the numerous witnesses who reside in California and the United States,

4    Defendants point to a single potential witness in Japan, Toshiaki Suzuki, but never explain why

5    his testimony will be relevant, let alone "critical," to their defense. *See* Mot. at 8.  Contradicting

6    Defendants' argument that Mr. Suzuki's testimony cannot be obtained in this Action, Mr. Suzuki

7    has stated under penalty of perjury that he is willing to provide testimony and evidence in this

8    Action if requested to do so *by the Defendants*.    Suzuki Decl. ¶2.  In other words, even if Mr.

9    Suzuki actually had some "critical" evidence (whatever it may be), Defendants will not be

10    precluded from obtaining that evidence if this case proceeds in this Court.

11       Even if Mr. Suzuki were refusing to testify in this Action, this would not support

12    dismissal.  As the Ninth Circuit ruled in *Tuazon v. RJ Reynolds Tobacco Co.,* 433 F.3d 1163,

13    1181 (9th Cir. 2006), where the balance of bringing a few witnesses from the foreign jurisdiction

14    is "less costly than moving the trial apparatus, including both parties and witnesses, from all over

15    the United States to the [foreign jurisdiction]," the district court should not dismiss on *forum non*

16    *conveniens* grounds.  Thus, the fact that most witnesses and evidence are in California or the

17    United States plainly outweighs a single witness located in Japan.  This is particularly true here

18    where the only witness Defendants have identified was admittedly working for them "on a

19    commission basis" at all relevant times.  See Labgold Decl. at ¶9 (Dkt. 10-2) and Ichinotsubo

20    Decl. at ¶6 (Dkt. 10-3).

21       That Defendants are unable to identify the subject matter of any evidence supposedly held

22    by Mr. Suzuki not surprising.  Nowhere in the Complaint does Mr. Ohkubo allege that Mr.

23    Suzuki's statements constituted fraud or that Mr. Suzuki made statements to Mr. Ohkubo on

24    behalf of the Defendants that can be considered fraud.  The fraudulent statements were not made

25    by Suzuki, but rather *by the Defendants themselves*.  Any "discussions" regarding the Investment

26    Contract are irrelevant since that document (which was drafted by Antara) speaks for itself.

27       Defendants' moving papers do not dispute that Mr. Ohkubo signed the Investment

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-13-

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

1  Contract, that the Investment Contract was drafted by the Defendants, or that Defendants

2  prepared the written materials that are the source of the fraud alleged in the Complaint.

3  Defendants' purported need for Mr. Suzuki as a witness appears to be nothing more than a fig leaf

4  intended to drag out proceedings in Tokyo.  Mr. Suzuki's expressed willingness to provide

5  testimony if requested by Defendants, however, eliminates any pretense that this case cannot

6  proceed here.

7  
8  **b.    Because Antara is Headquartered in Northern California, this Court is Convenient to All of the Parties**

9       Notably, nowhere in their Motion do Defendants argue that the Northern District of

10  California is not a convenient forum for them.  This is not surprising given that Antara was

11  headquartered in Mountain View, California and is registered to do business here.  Meckes Decl.

12  ¶4, Heringer Decl. ¶¶5-6.  Obviously, for Antara this is its "home" jurisdiction and is certainly a

13  far more convenient location to litigate this case than its state of incorporation Delaware where it

14  has no offices.  *See* 28 U.S.C. sec. 1332(c) ("a corporation shall be deemed a citizen . . . of the

15  State where it has its principal place of business.").  Northern California is a far more convenient

16  jurisdiction for Antara's former employees who will be witnesses in this Action and who are

17  unlikely to be willing to come to Japan.  As noted above, most of Antara's former employees still

18  reside in within driving distance of this Court.

19       California is also a highly convenient forum for defendants Labgold and Ichinotsubo.

20  Both of them are officers and directors of Antara, which is headquarted in this judicial district.

21  Surely, they cannot be surprised to be asked to litigate a case only a few miles from their

22  company's headquarters--which they admittedly chose because of its convenient location.  *See*

23  Cmplt. Ex. A at 41-42.

24       Defendants argue that Japan is a more convenient forum because Mr. Ohkubo resides

25  there.  However, even foreign plaintiffs are entitled to deference in their choice of forum, which

26  deference defendants must overcome with a "clear showing of facts which establish such

27  oppression and vexation of a defendant  as to be out of proportion to the plaintiff's convenience."

28  

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

1    *Ravelo Monegro* 211 F.3d at 514; *see also Lueck,* 236 F.3d at 1145 (defendant must also show

2    that trial in the plaintiffs' chosen forum will be "unnecessarily burdensome for the defendant or

3    the court."). Indeed, the Ninth Circuit has held that the convenience to the *plaintiff* of the

4    competing forum is largely irrelevant since the *forum non conveniens* doctrine does not compel

5    "plaintiffs to choose the optimal forum for their claim." *Ravelo Monegro* 211 F.3d at 514.

6         Where a foreign plaintiff can show that his chosen forum is, in fact, convenient, the Court

7    should afford the same level of deference to the foreign plaintiffs' choice as that afforded to a

8    domestic plaintiff. *Banco Nominees, Ltd. v. Iroquois Brands, Ltd.,* 748 F.Supp. 1070, 1073 (D.

9    Del. 1990). "Because the reason for giving a foreign plaintiff's choice less deference is not

10    xenophobia, but merely a reluctance to assume that the choice is a convenient one, that reluctance

11    can readily be overcome with a strong showing of convenience." *Lony v. E.I. Du Pont de*

12    *Nemours & Co.,* 886 F.2d 628, 634 (3d Cir. 1989)

13         As shown in detail above, Northern California is not only a convenient forum for Mr.

14    Ohkubo, it is a more convenient forum for the Defendants and for potential witnesses. Mr.

15    Ohkubo has agreed to come to the United States to give deposition if requested by the Defendants

16    or to testify at trial if required. Ohkubo Decl. ¶2. Mr. Ohkubo has also offered to make available

17    in the United States any of the employees of his company who might have relevant information.

18    *Id*. ¶3. Defendants, on the other hand, have offered nothing more than to agree to submit to

19    personal jurisdiction in Japan and have not even agreed to pay any judgment that might be

20    rendered there. *See Tuazon,* 433 F.3d at 1181 n.9.

21         Most of the witnesses that would be called at trial reside in California or the United States

22    and most of the relevant documents and other evidence are written in English and are located

23    here. Witnesses who do not reside in Japan cannot be compelled to attend a trial in Japan. And,

24    even if some of the witnesses were willing to attend a trial in Japan, requiring Mr. Ohkubo to

25    transport them and all the relevant documents from the United States will be costly and will

26    require extensive translation services before the Japanese courts. While Defendants have pointed

27    to a single Japanese-language document, Mr. Ohkubo will be required to translate Antara's

28    corporate minutes, bank records, investment agreements, e-mail communications and untold other

-15-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 6354 JW

1    English-language documents that show that Defendants swindled Mr. Ohkubo.

2              c.    **Location of Defendants, Witnesses and Evidence Will Make**
3                    **Trial in This Court Easier, More Expeditious Less Expensive**

4          As demonstrated above, most of the witnesses are California residents or residents of the

5    United States and most of the evidence will be written in English and is located here.

6    Accordingly, the "expeditious trial" factor plainly weighs against dismissal.

7          Defendants, however, argue cursorily that this factor weighs in favor of a Japanese forum

8    because the Investment Contract was "with a Japanese citizen was discussed and executed in

9    Japan, is written in the Japanese language, contains a Japanese forum selection clause and is

10   governed by Japanese law." Mot. at 8-9.   This superficial statement is at best misleading.

11         First, while it is true that one party to the Investment Contract is a citizen of Japan, the

12   other, Antara, is a citizen of California.  Second, whether the Investment Contract was

13   "discussed" in Japan is irrelevant since the complaint does not allege any fraudulent statements

14   made to Mr. Ohkubo during such discussions.   And even if such discussions were relevant, it is

15   more important that most of the relevant documents, including Antara's business plans, were

16   prepared in English in the United States by a California-based corporation.  And, as noted above,

17   the Investment Contract *does not* contain a "Japanese forum selection clause."  Under controlling

18   Ninth Circuit authority, the Jurisdictional Provision (which was drafted by Antara) is, at most, an

19   agreement by Antara to submit to the jurisdiction of the Tokyo district court.

20         The notion that the Investment Contract or Mr. Ohkubo's fraud claims are governed by

21   the law of Japan is also baseless.  There is no choice of law provision in the Investment Contract,

22   and Defendants have pointed to no material differences between the laws of California and Japan,

23   which is a threshold requirement for any choice of law analysis.  *Zinser v. Accufix Research Inst.,*

24   *Inc.,* 253 F.3d 1180, 1187 (9th Cir. 2001).[11]   Accordingly, this Court cannot make a

25   _____

26   [11] In *Zinser,* the Ninth Circuit held that, before this Court can decide whether the law of Japan or
     some other forum applies, the proponent must demonstrate a conflict of laws between the two
27   fora:
             the foreign law proponent must identify the applicable rule of law in
28           each potentially concerned state and must show it materially differs
             from the law of California . . . .  If . . . the trial court finds the laws are

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1    determination at this juncture that the law of Japan applies to Mr. Ohkubo's claims.

2        Even if this Court were required to decide the governing law, Defendants' arguments are

3    still meritless.  Defendants contend that the law of Japan applies because "a contract is to be

4    interpreted according to the law and usage of the place where it is to be performed; or, if it does

5    not indicate a place of performance, according to the law and usage of the place where it is

6    made." Mot. at 9 n. 3 quoting Cal. Civ. Code sec. 1646.  Defendants go on to argue that a

7    "contract is made where acceptance occurred."  *Id.* quoting *Arno v. Club Med Inc.,* 22 F.3d 1464,

8    1472 (9th Cir. 1994).

9        Even assuming these standards are correct, Defendants offer no basis upon which this

10   Court can conclude that the Investment Contract was to be performed in Japan or that the

11   Investment Contract was "made" in Japan.  The Investment Contract imposes multiple obligations

12   on Antara that can only be performed in the place where Antara was headquartered, i.e.,

13   California.  For example, Article 4 of the Investment Contract requires Antara to prepare and

14   disclose in good faith accounting documents, audit reports, tax returns, statements of accounts,

15   business plans and any other matters that will have a "material effect" on Antara's business.

16   Compl. Ex. C.   Similarly, Article 6.2 requires Antara to "exert its best efforts to make shares in

17   [Antara] public as soon as possible." *Id.*  These obligations could only have been performed by

18   Antara in California where it was headquartered.

19       There is likewise no evidence that the Investment Contract was "made" in Japan.

20   Although Mr. Ohkubo signed the Investment Contract in Japan, it had not been signed by Antara

21   when he executed it. Ohkubo Decl. ¶5.  Given Defendants' failure to provide evidence of where

22   the Investment Contract was executed by Defendants, it could have just as easily been "made" in

23

24          materially different, it must proceed to the second step and determine
             what interest, if any, each state has in having its own law applied to the
25           case…. Only if the trial court determines that the laws are materially
             different and that each state has an interest in having its own law
26           applied, thus reflecting an actual conflict, must the court take the final
             step and select the law of the state whose interests would be 'more
27           impaired' if its law were not applied.

28   253 F.3d at 1187.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

1   California.  As noted above, however, this issue is largely irrelevant since Defendants have not

2   satisfied the threshold requirement that they show some conflict of between the competing laws.

3   And, in any event, if Antara had wanted the law of Japan to apply, Antara, as the drafter of the

4   Investment Contract, should have included a provision to that effect, as it did in other agreements

5   it drafted.  Kawada Decl. ¶5, Ex. A, A at 6.

6   **4.    Public Interest Factors Weigh Heavily Against Dismissal**

7       In addition to the private interest factors noted above, this Court must also consider public

8   interest factors focusing primarily on the local interest in resolving the lawsuit, as well as the

9   Court's familiarity with the governing law and any unnecessary congestion or burden on local

10  courts and juries.  *Lueck*, 236 F.3d at 1147.

11      California has a very strong interest in resolving this dispute because it centers upon a

12  California-based company's efforts to procure foreign investment through fraud so that it could

13  do business here.  Cmplt. ¶¶3,9.  As alleged in the Complaint, Antara, along with its founders

14  Labgold and Ichinotsubo, engaged in an international scheme to convince foreigners to invest

15  start up capital on false pretenses and to enrich themselves at their investors' expense.  *Id*. at ¶¶

16  20-24.  California's interest is particularly strong in adjudicating such a claim because it is

17  imperative to *other* California-based companies that potential investors have confidence that they

18  will not be cheated out of their investments by the likes of Antara, Labgold and Ichinotsubo.

19  California has an obvious interest in promoting investment in California companies by ensuring

20  others do not engage in this kind of misconduct.  *See e.g., Lony,* 886 F.2d at 641 (holding that a

21  state "has a strong interest . . . in ensuring that businesses incorporated or operating within its

22  borders abide by the law.").   Also, given that Antara was headquartered in California and that

23  almost all of the critical witnesses are located here, California is the jurisdiction with the strongest

24  relationship to this case--far stronger than that of Japan.  Thus, not only is this case "related" to

25  California, this is, in fact, the jurisdiction with the *greatest* interest in resolving this dispute.

26      Although it is true that Japan may also have an interest in protecting its citizens from

27  fraud, recent Ninth Circuit authority prohibits this Court from attempting to "balance" these

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1    interests where, as here, it is clear that California also has an interest in resolving this dispute.

2    The relevant inquiry is *only* whether "there is an identifiable local interest in the controversy, not

3    whether another forum also has an interest." *Tuazon* 433 F.3d at 1182.  Because both fora have

4    some interest, under Ninth Circuit law, this factor cuts against dismissal.

5        Defendants also argue that the public interest factors would be served by dismissing this

6    case in favor of Japan because "Tokyo was the pre-selected forum for a dispute," because the

7    "Investment Contract was formed in Japan," and because "Japanese courts are familiar with

8    Japanese law and are fluent in the Japanese language." [12]  Mot. at 10.  As noted at various places

9    above, Japan was *not* the "pre-selected forum," the law of Japan does *not* apply and there is no

10   evidence that the Investment Contract was "formed" in Japan.  Thus, Defendants are left with no

11   public interest factors to support dismissal.[13]

12       Moreover, neither this Court's congestion nor the burden on local juries weighs in favor of

13   dismissal. This case will need to proceed on a stand-alone basis in some forum since

14   consolidation or coordination with the Eurus litigation in Japan is highly unlikely.  Kawada Decl.

15   ¶ 6. But perhaps more importantly, because Defendants have not agreed that any judgment

16   rendered by the Tokyo District Court would be enforceable in the United States, any action in

17   Tokyo is likely to lead to several other enforcement actions in the United States in those

18   jurisdictions where Defendants have assets.  Thus, rather than decreasing the congestion of the

19   courts, dismissal will only increase it.

20   **IV.    CONCLUSION**

21       Contrary to Defendants' argument, there is no mandatory forum selection clause in the

22   Investment Agreement from which this Court can conclude that venue is improper.  Likewise,

23   Defendants have not carried their burden of showing that the various *forum non conveniens* weigh

24   _____

25   [12] Plaintiffs also seem to argue that the fact that the Investment Contract was written in Japanese
     somehow bears on this analysis.  It does not.  The Ninth Circuit has rejected similar arguments,

26   stating:  "Juries routinely address subjects that are totally foreign to them, ranging from the
     foreign language of patent disputes to cases involving foreign companies, foreign culture and

27   foreign languages."  *Tuazon,* 433 F.3d at 1182.

     [13] Defendants do not argue that the burden on local courts or juries or this Court's congestion are

28   factors that weigh in their favor.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

1   in favor of dismissal.  The Court should therefore deny Defendants' Motion to Dismiss.

2

3   Dated:  March 24, 2008                          SQUIRE, SANDERS & DEMPSEY, L.L.P.

4                                                   By: _____/s/_____
                                                         Joseph A. Meckes
5
                                                    Attorneys for Plaintiff
6                                                   IZUMI OHKUBO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07 06354 JW

**APPENDIX OF KEY WITNESSES**

| No. | Name | Location | Title and Subject Matter of Testimony |
|---|---|---|---|
| 1. | Antara Biosciences, Inc. | Mountain View, California (last known address) | Defendant:  All subject areas. |
| 2. | Marc Labgold | Reston, Virginia | Defendant:  All subject areas. |
| 3. | Dana Ichinotsubo | Honolulu, Hawaii | Defendant:  All subject areas. |
| 4. | George Jokhazde | Mountain View, California | Antara Chief Operating Officer. Operations and finances of Antara. Business and IPO outlook. |
| 5. | Joelle Wada | Cupertino, California | Antara Controller.  Operations and finances of Antara.  Terms and circumstances of shareholder investments, financial statements, receipts and expenditures and other financial issues. |
| 6. | Lavonne Young | Palo Alto, California | Antara Director of Operations. Operations and finances of Antara.  Business and IPO outlook. |
| 7. | Sarah Brashears | Denver, Colorado | Antara Executive Vice President and General Counsel.  Operations and finances of Antara.  Business and IPO outlook. Shareholder relations and communications; Accuracy of representations made to investors; Relations with other investors and insiders. |
| 8. | M. S. Park | Honolulu, Hawaii | Founder of Clinical Laboratories of Hawaii and Officer of Akolea LLC.  Terms and conditions re contribution of start-up capital by Clinical Laboratories. Background and terms of stock sale to Akolea. Relationship with Antara and its officers and directors.  Payments from Antara. |
| 9. | Robert Gordon | San Jose, California | Antara Director of Information Technology.  Antara operations and finances.  IT systems and electronic recordkeeping, including accounting programs and data bases of investors and shareholders. |
| 10. | Chandu Ammini | Mountain View, California | Antara Director of Business Development. Antara financing prospects and operations. Antara's uses of funds and new business prospects. |

| NO. | NAME | LOCATION | TITLE AND SUBJECT MATTER OF TESTIMONY |
|---|---|---|---|
| 11. | Dory Ichinotsubo | Honolulu, Hawaii | Sister of Defendant Dana Ichinotsubo. Meeting with Mr. Ohkubo in Japan. Circumstances surrounding Mr. Ohkubo's investment.  Antara operations and finances.  Communications from vidpbx.com domain used by Dana Ichinotsubo. |
| 12. | Mark Trulson | San Jose, California | Antara Vice President of Chemistry & Engineering.  Antara operations and finances, including use of investor funds, research and development activities and Antara intellectual property developed. |
| 13. | Mark Kozlowski | Mountain View, California | Antara Director of Array Applications.  "Key employee" identified by S. Brashears (Antara GC).  Antara operations and finances, including use of investor funds, research and development activities and Antara intellectual property developed. |
| 14. | Bradley Scherer | Saratoga Springs, New York | Antara Director of Array Technologiess.  "Key employee" identified by S. Brashears (Antara GC).  Antara operations and finances, including use of investor funds, research and development activities and Antara intellectual property developed. |
| 15. | Sei Jong Lee | Honolulu, Hawaii | Antara Director of Development and Engineering.  "Key employee" identified by S. Brashears (Antara GC).  Antara operations and finances,  including use of investor funds, research and development activities and Antara intellectual property developed. |
| 16. | Clinical Laboratories of Hawaii | Honolulu, Hawaii | Founding corporate partner of Antara.  Terms and conditions of any investment in Antara.  Receipt of funds from Antara.  Business relationship with Antara. |
| 17. | Akolea LLC | Ewa Beach, Hawaii | Founding investor in Antara.  Terms and conditions of any investment in Antara.  Receipt of funds from Antara.  Business relationship with Antara. |
| 18. | Bank of Hawaii | Honolulu, Hawaii | Antara's bank.  Antara banking records, including receipt and disposition of investments by shareholders, other receipts and expenditures to individual defendants and others. |

| No. | Name | Location | Title and Subject Matter of Testimony |
|---|---|---|---|
| 19. | Patton Boggs LLP | Washington, D.C. | Counsel to Antara. Antara's corporate, intellectual property and regulatory matters. Also, non-privileged e-mails from Marc Labgold (Patton Boggs partner) regarding Antara. |
| 20. | Labgold Trust | United States | Purported capital investor in Antara. Terms and conditions of any investment in Antara. Receipt of funds from Antara. Business relationship with Antara. Relationship with Defendant Labgold. |
| 21. | Ichinotsubo Family Trust | United States | Purported capital investor in Antara. Terms and conditions of any investment in Antara. Receipt of funds from Antara. Business relationship with Antara. Relationship with Defendant Ichinotsubo. |
| 22. | "Wall Street Market Makers" | United States | Discussions between Antara founders and "Wallstreet market makers" purportedly supported "expected IPO value on the order of US $750 million." |