1    MICHAEL J. HARTLEY (State Bar No. 189375)
MACKENZIE E. HUNT (State Bar No. 251127)
2    **WESTON, BENSHOOF, ROCHEFORT,**
     **RUBALCAVA & MacCUISH LLP**
3    333 South Hope Street
Sixteenth Floor
4    Los Angeles, California 90071
Telephone: (213) 576-1000
5    Facsimile: (213) 576-1100
Email: mhartley@wbcounsel.com
6    Email: mhunt@wbcounsel.com

7    Attorneys for Defendants
ANTARA BIOSCIENCES, INC.
8    MARC R. LABGOLD and DANA ICHINOTSUBO

9

10

11

12            **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| IZUMI OHKUBO, | Case No.: C07 06354 JW |
|       Plaintiff, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT** |
|   v. | Date: April 14, 2008 |
| ANTARA BIOSCIENCES, INC. MARC R. LABGOLD AND DANA ICHINOTSUBO, | Time: 9:00 a.m. |
|       Defendants. |      Honorable James Ware Courtroom 8 |
| | [Declaration of Takaaki Nagashima filed concurrently herewith] |
| | Complaint Filed: December 14, 2007 |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

                                                                              Page

I.    INTRODUCTION .................................................................................. 1

II.   THE CASE SHOULD BE DISMISSED BASED ON THE FORUM ................ 1

      SELECTION CLAUSE ........................................................................ 1

III.  THE CASE SHOULD BE DISMISSED BASED ON FORUM NON .............. 5

      CONVENIENS. ................................................................................. 5

      A.    Tokyo District Court Is An Adequate Alternative Forum. ....................... 5

      B.    Proceeding With Trial In the Northern District Would
            Unnecessarily Burden Antara and The Court. ............................................ 6

            1.    Suzuki's Live Testimony At Trial Is More Important Than
                  Having Live Testimony From The Handful Of Ex-Antara
                  Employees Still Living In This District ........................................... 6

                  a.    Suzuki Is The Most Important Witness In This Case,
                        and Defendants Cannot Compel Him To Appear For
                        Trial In The Northern District. ............................................ 7

                  b.    The Handful of Ex-Antara Employees Still Residing
                        In The Northern District Are Bit Players By
                        Comparison, And Could Easily Have Their
                        Testimony Addressed Through Deposition. ....................... 10

                  c.    Additional Private Factors Also Weigh In Favor of
                        Tokyo District Court. ........................................................ 12

            2.    The Proper Interpretation of The Terms Of The Investment
                  Contract Is Crucial, And The Tokyo District Court Is Better
                  Positioned To Address This Issue. ................................................. 13

            3.    The Tokyo District Court Is Already Addressing The Terms
                  Investment Contract In Ohkubo's Current Litigation There. ......... 15

IV.   CONCLUSION ................................................................................... 15

1

# TABLE OF AUTHORITIES

2

3                                                                                       **Page**

4    CASES

5    *Arsape S.A. v. JDS Uniphase Corp.*,
        2004 U.S. Dist. LEXIS 24270 (N.D. Cal. July 29, 2004) ..............................7, 11, 14
6
     *AV Media, PTE, Ltd. v. Omnimount Systems, Inc.*,
7        2006 U.S. Dist. LEXIS 76106 (N.D. Cal., Oct. 6, 2006) ......................................11

8    *Calas & Sons, Inc. v. Willingham*,
        17 F.3d 123 (5th Cir. 1994) ...........................................................................4
9
     *Citro Florida, Inc. v. Citrovale, S.A.*,
10       760 F.2d 1231 (11th Cir. 1985) ......................................................................5

11   *Docksider Ltd. v. SEA Technology, Ltd.*,
        875 F.2d 762 (1989) .................................................................................2, 4
12
     *Frietsch v. Refco, Inc.*,
13       56 F.3d 825 (7th Cir. 1995) .........................................................................2-3

14   *Global Seafood v. Bantry Bay Mussels, Ltd.*,
        2008 U.S. Dist. Lexis 12019 (D.Conn. Feb. 20, 2008) .........................................2
15
     *Gulf Oil Corp. v. Gilbert*,
16       330 U.S. 501, 67 S.Ct. 839 (1947) ..................................................................7

17   *Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*,
        58 F.Supp.2d 925 (N.D. Ill. 1999) ...................................................................5
18
     *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
19       817 F.2d 75 (9th Cir. 1987) ...........................................................................4

20   *J.C. Renfroe & Sons, Inc. v. Renfroe Japan, Inc.*,
        515 F.Supp.2d 1258 (M.D.Fla. 2007) ............................................................12
21
     *K&V Scientific Co., Inc. v. BMW*,
22       314 F.3d 494 (10th Cir. 2002) ........................................................................4

23   *Korean Press Agency, Inc. v. Yonhap News Agency*,
        421 F.Supp.2d 775 (S.D.N.Y. 2006) ............................................................2-3
24
     *Lockman Foundation v. Evangelical Alliance Mission*,
25       930 F.2d 764 (1991) ...................................................................................5

26   *Lueck v. Sundstrand Corp.*,
        236 F.3d 1137 (9th Cir. 2001) ...................................................................6, 13

27

28

1151602.2

# TABLE OF AUTHORITIES
(continued)

Page

*Wells Fargo Century, Inc. v. Brown,*
　　475 F.Supp.2d 368 (S.D.N.Y. 2007) .................................................................................2

*Williams v. Bowman,*
　　157 F.Supp.2d 1103 (N.D. Cal. 2001) ...............................................................................6


STATUTES

28 U.S.C. § 1782 ............................................................................................................13

iii

1151602.2

1    I.    **INTRODUCTION**

2          Mr. Ohkubo is one of the wealthiest men in Japan, and when he decides

3    to forum shop, he certainly spares no expense. The venue question, though, does not

4    depend on who has the bigger witness spreadsheet, or who intends to fly the bigger

5    contingent across the Pacific. There are only a few dispositive questions, and they are

6    relatively simple:

7          **(1)**    Is a forum selection clause mandatory if it says the Tokyo District

8    Court "shall be **the** Court with jurisdiction" over claims relating to Ohkubo's

9    Investment Contract (emphasis added)?

10          **(2)**    Who is more important to have at trial – Suzuki, who was

11    Ohkubo's sole contact on all things Antara, or the handful of former Antara

12    employees still living in the Northern District (that Ohkubo never spoke to,

13    corresponded with, or probably even knew existed until recently)?

14          **(3)**    What Court is better equipped to interpret Ohkubo's Japanese

15    Investment Contract, this Court or the Tokyo District Court (who speaks Japanese,

16    understands Japanese custom and practice, and already has experience interpreting

17    this specific Contract)?

18          **(4)**    Is it advisable (as a matter of comity, efficiency, or convenience)

19    for the Court to devote its scarce resources to this case, when Ohkubo has already

20    asked the Tokyo District Court to adjudicate his rights concerning this specific

21    Contract (and according to Okhubo, with a decision due by the end of the year)?

22          The venue issue in this case turns on the Investment Contract, Suzuki,

23    and the Japanese Litigation. All of these factors support the granting of this Motion

24    and dismissal of this case in favor of the Tokyo District Court.

25    II.    **THE CASE SHOULD BE DISMISSED BASED ON THE FORUM**

26          **SELECTION CLAUSE.**

27          Ohkubo's case should be dismissed based on the plain language of the

28    forum selection clause in his Investment Contract. The rule in the Ninth Circuit is that

1151602.2

1

1    where "venue is specified with mandatory language," the place of suit "lies

2    exclusively in that designated [venue]." (*Docksider Ltd. v. SEA Technology, Ltd.*, 875

3    F.2d 762, 764 (1989)).    Ohkubo's clause clearly satisfies that standard.

4          The clause states that "The Tokyo District Court **shall be the Court** with

5    jurisdiction regarding lawsuits about the Memorandum" (emphasis added).    It

6    specifies a particular venue (the Tokyo District Court), and it defines this venue with

7    mandatory language.   The Tokyo District Court "shall be **the** Court" – the single,

8    specific Court – with jurisdiction over Ohkubo's claims.   The idea of a singular,

9    definitive court with jurisdiction ("the court" with jurisdiction) implicitly excludes the

10    possibility of other courts having jurisdiction as well. This is exactly the type of

11    language that courts have concluded is an agreement to exclusive jurisdiction.  (*See,*

12    *e.g.*, *Korean Press Agency, Inc. v. Yonhap News Agency*, 421 F.Supp.2d 775, 777, 780

13    (S.D.N.Y. 2006) (exclusive: "If any disputes arise between 'A' and 'B,' it [sic] shall

14    be under the jurisdiction of the Seoul District Civil Court, in Seoul, Korea.").[1]

15          Reading the clause as exclusive is also the only way to give full effect to

16    its language. If the clause were read as permissive (as Ohkubo suggests), there would

17    be no reason for it to state that the Tokyo District Court "shall be the Court" with

18    jurisdiction.  It could simply state that the Tokyo District Court "has jurisdiction."

19    Instead, it repeats the word "Court," and modifies it with a definite article ("the") --

20    the Tokyo District Court "shall be the Court" with jurisdiction.  The clause must be

21    read to give effect to this language, and the only way to do that is if the clause vests

22    mandatory and exclusive jurisdiction in the Tokyo District Court.  (*See, e.g., Frietsch*

23    *v. Refco, Inc.*, 56 F.3d 825, 829-30 (7th Cir. 1995) (Posner, J.) ("place of jurisdiction

24    … is the registered office of the trustee, to the extent permissible under law"; "'to the

25

---

26    [1] *See also Wells Fargo Century, Inc. v. Brown*, 475 F.Supp.2d 368, 370, 371
    (S.D.N.Y. 2007) ("The undersigned expressly submits and consents to the jurisdiction

27    of the Supreme court of the State of New York, in the County of New York, with
    respect to any claim or demand upon the undersigned based upon this instrument";

28    deemed exclusive); *Global Seafood v. Bantry Bay Mussels, Ltd.*, 2008 U.S. Dist. Lexis
    12019, *2, *9 (D.Conn. Feb. 20, 2008) ("This agreement is governed by Irish Law
    and Irish Courts"; deemed exclusive).

2

1    extent permissible' would have no function if the clause were not mandatory").

2          This reading, of course, also happens to mesh logically with the real

3    world context surrounding the clause.  As more fully explained *infra* (in Section III),

4    it is part of an Investment Contract discussed between two Japanese citizens (Suzuki

5    and Ohkubo) in Japan; drafted in Japanese (by Suzuki[2]); delivered and signed by

6    Ohkubo in Japan; signed by Antara and by its Japanese sponsor company (Eurus) in

7    Japan[3]; governed by Japanese custom and usage; and subject to a suit that Ohkubo has

8    already filed in Japan.  The clause also (not coincidentally) is construed as conferring

9    exclusive jurisdiction under Japanese law.  (*See* Declaration of Takaaki Nagashima

10    ("Nagashima Decl.") ¶5; *see also Korean Press Agency,* 421 F.Supp.2d at 780 (while

11    federal common law governs forum selection clauses, "[a] Korean court's

12    interpretation of the clause, while not binding, may aid in understanding what the

13    clause actually means, not under Korean Law but in the Korean language").

14          Japan is the "natural forum," and Ohkubo, at the time he signed the

15    Contract, could not reasonably have expected to litigate issues relating to it in the

16    Northern District of California several thousand miles away.  (*See Frietsch,* 56 F.3d at

17    830 (deeming clause mandatory for similar reasons, among others).  To the contrary,

18    we expect that if Antara was the one instituting this action in this Court, Ohkubo

19    would be opposing jurisdiction using exactly the same language.  (*Korean Press*

20    *Agency,* 421 F.Supp.2d at 780 (giving weight to the fact that enforcing the clause

21    would not require the plaintiff to "litigate in a country with which it has no connection

22    and no experience")).

23

24    [2]   While Ohkubo repeatedly asserts that Antara/Labgold is the drafter of the Contract

25    at issue, a quick review clearly proves this is not the case.  One of the few English language phrases is the Contract is within the Antara signature block. (Complaint, Ex.

26    C, at 6).  The words read "Dr. Mark Labgold."  If drafted by Antara/Labgold, surely the drafter would spell his OWN name correctly – i.e. "Marc" not "Mark."

27    Interestingly, the uncertified translation provided by Ohkubo corrects this blatant drafter's error. (*Id.* at 13).

28    [3] The "actual" contract was signed by Antara (and Eurus) in Japan. The authenticity of the document attached to Ohkubo's Complaint (Exh. C) is in question, but is not determinative of this motion.

3

1    Ohkubo's few remaining arguments merit only a brief response.

2    **1.**    There is no rule that a mandatory forum selection clause must use

3    the magic words "exclusive," "sole" or "only."    As Ohkubo's own cases make clear,

4    the Ninth Circuit requires language indicating an "intent to make jurisdiction

5    exclusive," not a forum clause that actually say the specific word "exclusive."  (Opp.

6    at 4 (*quoting Docksider, Ltd. V. Sea Tech. Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989)

7    (holding that "[v]enue of any action brought hereunder shall be deemed to be

8    Gloucester County, Virginia" was exclusive).

9    **2.**    None of Ohkubo's cases (Opp. at 4-5) deal with a forum selection

10    clause that is the same as the one in the Investment Contract.    They refer to a

11    geographic location, without designating (as the Investment Contract does) that a

12    specific court "shall be the Court with jurisdiction."  (*See, e.g., K&V Scientific Co.,*

13    *Inc. v. BMW*, 314 F.3d 494, 496 (10th Cir. 2002) ("Jurisdiction for all and any

14    disputes arising out of or in connection with this agreement is Munich.")[4]    They refer

15    generally to a court having "jurisdiction over the parties," without specifying that

16    court (as the Investment Contract does) as "the Court with jurisdiction" regarding the

17    claims at issue.  (*E.g., Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 76

18    (9th Cir. 1987) ("The courts of California, County of Orange, shall have jurisdiction

19    over the parties in any action at law relating to the subject matter or the interpretation

20    of this contract.").    Or (unlike the Investment Contract) they use language that by its

21    terms is not exclusive.  (*E.g., Calas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th

22    Cir. 1994) ("[t]he laws and courts of Zurich are applicable").    These differences

23    render Okhubo's authorities "of little assistance in resolving the current dispute."

24    (*K&V Scientific*, 314 F.3d at 498-99).

25    **3.**    The argument that an ambiguous forum selection clause should be

26    _____

27    [4] (*See also Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231 (11th Cir. 1985)
("This constitutes an executory contract between the exporter and the above-indicated

28    buyer.    Place of jurisdiction is San Paolo/Brazil."); *Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*, 58 F.Supp.2d 925, 927 (N.D. Ill. 1999) ("Place of jurisdiction shall be Dresden.") (Opp. at 6 & n.4).

4

1    "interpreted against the drafter" (Opp. at 6:8-12) is irrelevant in this case. This clause

2    is not ambiguous. There is only one reading that gives its language effect, and that is

3    mandatory and exclusive jurisdiction in the Tokyo District Court. Moreover, Antara

4    did *not* draft the clause, Suzuki did. Surely if Antara/Labgold had drafted the

5    document as alleged, Labgold would have spelled his name correctly. (*See* note 1,

6    *supra*). As more fully explained below, Suzuki was Ohkubo's "representative," not

7    Antara's, so if the clause should be construed against anyone, it should be construed

8    against Ohkubo.

9           4.    The fact that there is a different forum selection clause in a

10   different contract between Antara and JAIC Securities Co. ("JAIC"), a Japanese

11   security broker, is equally irrelevant. (Opp. at 5 (*citing* Kawada Decl., ¶5, Exh. A)).

12   That agreement was drafted in English, not Japanese (and by JAIC, not Suzuki), so of

13   course the language is different. And because the forum selection clause in Ohkubo's

14   agreement is not ambiguous, the JAIC agreement has no bearing as a matter of law.

15   **III.   THE CASE SHOULD BE DISMISSED BASED ON FORUM NON**

16   **CONVENIENS.**

17          In addition to the forum selection clause, Ohkubo's case should be

18   dismissed on forum *non conveniens* grounds as well. The three key factors are

19   Suzuki, the Investment Contract, and the Japanese Litigation.

20   **A.   Tokyo District Court Is An Adequate Alternative Forum.**

21          Before turning to these three issues, we first address briefly the threshold

22   issue of the Tokyo District Court as an alternative forum, since Ohkubo has actually

23   objected on this ground (albeit half-heartedly). "Federal courts have consistently

24   found that Japan provides an adequate alternative forum to litigation in the United

25   States." (*Lockman Foundation v. Evangelical Alliance Mission,* 930 F.2d 764, 769

26   (1991)). The parties have already implicitly acknowledged as much by agreeing to

27   jurisdiction there under the forum selection clause (even if that jurisdiction is not

28   exclusive). Ohkubo has further confirmed the adequacy of the Japanese forum by

5

1 initially filing suit against Eurus (Antara's Japanese sponsor company) in Tokyo
2 District Court for Antara's alleged breach of the Investment Contract. That case
3 remains pending in Japan, and involves precisely the same Contract and issues before
4 this Court. (Nagashima Decl., ¶5; Kawada Decl., ¶¶4, 6).  These facts easily establish
5 the adequacy of the Tokyo District Court as an alternative forum.

6          Ohkubo hints (without taking a position) that his fraud claim might not
7 be recognized in Japan (Opp. at 8:3-6).  But whether it would or not is irrelevant.  A
8 forum is deemed inadequate only in "rare circumstances . . . where the remedy
9 provided by the alternative forum . . .is so clearly inadequate or unsatisfactory, that it
10 is no remedy at all."  (*Lueck v. Sundstrand Corp.,* 236 F.2d 1137, 1143 (9th Cir. 2001).
11 The Tokyo District Court provides a remedy, and Ohkubo is already pursuing it.

12    **B.    Proceeding With Trial In the Northern District Would Unnecessarily**
13         **Burden Antara and The Court.**

14          We now turn, then, to the meat of the *non conveniens* analysis:  whether
15 the trying this case in the Northern District will "unnecessarily burden[some] for the
16 defendants or the court."  (*Lueck,* 236 F.3d 1137, 1145 (9th Cir. 2001).  Okhobu's
17 views factor minimally, if at all, in this equation.  He is flying his entire case across
18 the Pacific because he wants a new forum, not for convenience's sake. (*Williams v.*
19 *Bowman,* 157 F.Supp.2d 1103, 1107 (N.D. Cal. 2001) ("'a foreign plaintiff's choice
20 deserves little deference" because, among other things, "plaintiffs should be
21 discouraged from forum shopping.")  The focus is on the evidence and the issues, and
22 therefore on Suzuki, the Investment Contract, and the Japanese Litigation.

23    **1.    Suzuki's Live Testimony At Trial Is More Important Than**
24         **Having Live Testimony From The Handful Of Ex-Antara**
25         **Employees Still Living In This District.**

26          The first key issue is the centrality of Suzuki.  Ohkubo claims that he
27 wins the location battle because he has submitted longer witness and document lists.
28

6

1   But as this Court has recognized, the *non conveniens* analysis is not a numbers game.[5]
2   "A *forum non conveniens* inquiry is not based upon the number of witnesses or
3   quantity of evidence in each location, but upon the 'materiality and importance of the
4   anticipated evidence and witness' testimony,' and their convenience and accessibility
5   to the forum." (*Arsape S.A. v. JDS Uniphase Corp.*, 2004 U.S. Dist. LEXIS 24270,
6   *17 (N.D. Cal. July 29, 2004))  And here, Suzuki's importance dwarfs that of the
7   handful of former Antara employees alleged to reside within this District.

8               a.   **Suzuki Is The Most Important Witness In This Case, and**
9                    **Defendants Cannot Compel Him To Appear For Trial In**
10                   **The Northern District.**

11              We understand that Ohkubo is playing dumb about Suzuki's importance,
12  but as explained below, he is the central figure and most important witness in this
13  case.  He is also a Japanese national, living in Tokyo.  And while he apparently has
14  agreed to appear for deposition in Japan, he has not agreed to appear in this District
15  for trial and cannot be compelled to do so.  That distinction is crucial; the jury (if here)
16  or the judge (in Japan), needs to see him live, not via snippets of videotape.  His hands
17  are on everything, and his testimony and credibility will be a major factor.  (*See, e.g.,*
18  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511, 67 S.Ct. 839,844 (1947) ("Certainly to
19  fix the place at trial at a point where litigants cannot compel personal attendance and
20  may be forced to try their cases on deposition, is to create a condition not satisfactory
21  to court, jury or most litigants.")

22              1.   Ohkubo's fraud claim depends, in its entirety, on Suzuki's status as
23  Antara's "agent." (Complaint ¶ 10).  Suzuki was Ohkubo's only source of information
24  and sole contact point for his investment in Antara. (*Id.* ¶10-14; Opp. Br. at 13:21-
25  14:6).   Ohkubo, who does not speak English (Nagashima Decl. ¶5), had no
26  conversations directly with Labgold, Ichinotsubo or anyone else at Antara. (Opp. Br.
27

28  _____
[5] For this reason, Antara did not list all of the potential witnesses located in Japan,
instead focusing on the most critical witness – Suzuki.

7
1151602.2

1    at 13:21-14:6).  He spoke only with Suzuki.  (*Id.*)  Ohkubo does not allege that he

2    received any documents directly from Antara in connection with his investment, only

3    from Suzuki.  (Complaint ¶¶10-14).  This includes the four so-called "Antara"

4    documents he allegedly relied on in purchasing Antara stock (*see* para. 2 below).[6]

5    These were all provided to him by Suzuki in Japan.  (*See* Complaint ¶¶10-14).

6         All of the dealings that were Ohkubo's precursor to investing in Antara

7    were with Suzuki.  (*Id.*)  Ohkubo does not allege that any "information" was provided

8    to him by Antara, Labgold or Ichinotsubo; whatever it is that he did in fact receive,

9    came through Suzuki.    Ohkubo therefore has no fraud claim against any of the

10   Defendants – Antara, Labgold, or Ichinotsubo – unless he can prove, based on his

11   dealings with Suzuki, that Suzuki was acting as the Defendants' agent.    Suzuki is

12   central.

13        **2.**    Ohkubo's fraud claim also depends, in its entirety, on the contents,

14   authenticity, and authorization for, four written documents that Ohkubo says he

15   received from Suzuki (a "Business Plan," a "Business Summary," the Investment

16   Contract, and an email from Suzuki).  (Complaint ¶¶ 10-14).  These documents are

17   Ohkubo's only source for the alleged misrepresentations.  (*Id.*; Opp. at 13:21-14:6).

18   They all were provided by Suzuki.  (*Id.*)  And they all are suspect.

19        The so-called Antara "Business Plan," for example, is Exhibit A to the

20   Complaint.  It appears to be an amateurish adaptation of an early draft Antara business

21   plan.  There is a five-page "Business Summary" inserted at the beginning (containing

22   many of Ohkubo's alleged misrepresentations) that does not match the tone,

23   formatting or type size of the rest of the document, and that even spells Antara's name

24   differently from the rest of the document ("Antara Bioscience Inc." instead of

25   "ANTARA BioSciences, Inc.").  The alleged "business plan" also has a large **"NOT

26   FOR DISTRIBUTION"** label on the face page.  And last but certainly not least, the

27

28   [6] Defendants have not "embraced" the documents as Ohkubo asserts (Opp. at 2:23).
     Instead, the motion to dismiss is properly focused on the pertinent issues, without
     trying to muddy the record.

1151602.2

1    "Business Plan" is written entirely in English, a language that Ohkubo has already
2    admitted he does not speak! (Nagashima Decl. ¶5). The same is true for the Antara
3    "Business Summary," which is Exhibit B to the Complaint. It is an equally
4    amateurish powerpoint without any author's name or other source of attribution.

5          It is hard to imagine any investor relying on such documents, let alone an
6    investor as sophisticated as Ohkubo -- the founder and President of Forum
7    Engineering. But he claims to have done so. Thus, where Suzuki obtained these
8    documents, his role in creating them, and his discussions with Suzuki, will be critical
9    at trial. Again, everything goes through Suzuki.

10          **3.** Ohkubo's contract claim depends in its entirety on the written
11    Investment Contract, an incredibly one-sided document favoring Ohkubo (*see* Section
12    III.B.2 *infra*). Ohkubo says he received it from Suzuki without an Antara signature.
13    (Ohkubo Decl. ¶5). He states that he believes an Antara "representative" (presumably
14    Suzuki) drafted it. (*Id.,* ¶4). He apparently discussed it with Suzuki (but not anyone
15    else at Antara), executed it and returned it to him. (*Id.,* ¶4-6; Complaint ¶¶10-13).
16    Other than Ohkubo, Suzuki is perhaps the only witness to the drafting of the Contract,
17    the source of its terms, the negotiations with Ohkubo, and the Contract's execution.
18    Once again, everything goes through Suzuki.

19          **4.** Finally, there is the one obvious question begged by all of the
20    above: what is the true nature of Ohkubo's relationship with Suzuki? This is a critical
21    piece of Antara's defenses, and the counterclaims it intends to file against both
22    Ohkubo and Suzuki. Consider how even the basic facts play out: Ohkubo, the head
23    of a huge engineering firm (Forum Engineering), and one of the wealthiest men in
24    Japan, supposedly invests $1.5 million based upon an English document he cannot
25    read and a ten page Powerpoint presentation that a high-school student could create.
26    He supposedly does so without relying on a single word that Suzuki -- his sole
27    "Antara" contact -- said to him. (Ohkubo claims he relied exclusively upon the
28    "documents," and not on anything Ichinotsubo or Labgold said or did not say to him.

9

1    (Opp. at 13:21-14:6)).  Then, without any explanation, a few months after making this

2    investment, and after Suzuki collects his commission from Antara, Ohkubo suddenly

3    gets cold feet and demands the repurchase of his stock.  He does so by invoking the

4    incredibly one-sided provisions of his Investment Contract, which were drafted in

5    Japanese by (who else?) his friend Suzuki, and files suit against Eurus (and not

6    Antara, Labgold or Ichinotsubo) in Tokyo District Court.  (Nagashima Decl. ¶5.)

7            Based on these facts, if Suzuki is anyone's "agent," subsequent events

8    demonstrate that he was Ohkubo's.  They worked together (with their friend Ohno) to

9    illegally bilk substantial commissions from Antara without any intention of investing

10   in good faith in the Company.  Who better than Suzuki to testify on these issues?  As

11   with everything else, the main road leads through him.

12           We understand that Suzuki has made a promise to appear for deposition

13   in Tokyo.[7]  But even assuming that promise is enforceable in any meaningful way

14   (and we have our doubts), playing or reading deposition excerpts is a far cry from

15   allowing a Northern District jury to see him in person and judge his testimony and

16   credibility first hand.   It would be a travesty not to have such a central character live

17   at trial, and it would severely disadvantage Antara -- particularly considering the

18   language barrier.  This is a situation that is entirely avoidable if trial were held in

19   Tokyo District Court where Suzuki could be forced to appear in person.

20                    b.    **The Handful of Ex-Antara Employees Still Residing In**

21                          **The Northern District Are Bit Players By Comparison,**

22                          **And Could Easily Have Their Testimony Addressed**

23                          **Through Deposition.**

24           Ohkubo, predictably, has submitted a laundry list of witnesses to weigh

25   down his side of the equation.  But the few witnesses on Ohkubo's list who actually

26   count for convenience purposes -- those who still reside in the Northern District and

27

28   [7] Suzuki's declaration is more probative for what it does not say, than what it does.
     Ohkubo repeatedly asserts that Suzuki was acting at all times as Antara's agent.
     However, Suzuki's declaration is noticeably silent on this point.

1  therefore would be available in person for trial -- are largely bit players.

2      The breakdown of Ohkubo's 23 listed witnesses is as follows.  First,
3  there are the five party or party-affiliated witnesses (Antara, Labgold, Ichinotsubo, the
4  Labgold Trust, the Ichinotsubo Family Trust), who do not count for convenience
5  purposes because they will be required to appear for trial and produce their documents
6  whether the trial takes place in San Jose or Tokyo.  (*Aspare*, 2004 U.S. Dist. LEXIS
7  24270 at *17-18).  These five witnesses alone cover all of Antara's books and records
8  and its business operations.

9      Next, there are the eleven third-party witnesses who are outside the
10  Northern District (they reside in Colorado, Hawaii, New York, and Washington D.C.).
11  Their convenience does not count because they could not be compelled to appear for
12  trial in either forum (the Northern District or Tokyo).   (*AV Media, PTE, Ltd. v.*
13  *Omnimount Systems, Inc.*, 2006 U.S. Dist. LEXIS 76106, *9 (N.D. Cal., Oct. 6, 2006)
14  ("the Court does not consider the convenience of parties and witnesses who are
15  located outside both the current and transferee fora").

16      That leaves a total of seven former Antara employees that allegedly still
17  reside in the Northern District, five of whom Ohkubo claims (without any basis) are
18  important. (Opp. at 10).  (The only two people Okhubo claims he met from Antara
19  were Labgold and Ichinotsubo, and he admits they did not say anything he relied
20  upon.)  So we are down from twenty-three witnesses to at most five whose alleged
21  importance needs to be balanced against Suzuki's for purposes of live testimony at
22  trial.

23      Judging from Ohkubo's descriptions of these witnesses, they have
24  nowhere near the centrality or importance of Suzuki, if at all.  Ohkubo does not claim
25  they were involved in his investment transaction or any of the specific conduct at issue
26  in this case.  They simply are potential deposition candidates who "may" have
27  knowledge regarding the supposed "true state" of Antara's finances and accounting
28  systems. (Opp. at 10-11).  These are hardly issues that turn on witness' credibility

1151602.2

1  (and certainly not to the same extent as Suzuki's) -- all of the financial documents

2  they would be relying on for their testimony are already in Antara's possession and

3  would be produced in this litigation, wherever it goes forward.  And perhaps equally

4  as important, because Ohkubo tried to recover his investment almost immediately

5  after Suzuki was paid, he is seeking testimony regarding a matter of a few months in

6  2006 at the very outset of Antara's inception. This is just not the kind of overarching,

7  credibility-based testimony that makes or breaks a trial.

8               c.    **Additional Private Factors Also Weigh In Favor of**

9                    **Tokyo District Court.**

10          Two additional factors, beyond the heavy weight of Suzuki's testimony,

11  weigh in favor of trial in Tokyo District Court.  The first are the forums' respective

12  abilities to compel discovery from third parties located in each other's jurisdiction --

13  in other words, discovery from Japanese witnesses for a Northern District litigation, or

14  discovery from Northern District witnesses for a trial in Japan.  There are always new

15  witnesses or parties that are identified as the case progresses.  Antara, for example,

16  may very well need to pursue evidence (and perhaps claims) against individuals

17  residing in Japan, including the other members of Ohkubo's investment group.[8]   This

18  Court, however, has almost no ability to compel discovery from Japanese witnesses.

19  Conversely, if the litigation moves forward in Japan, Ohkubo would have no problem

20  deposing witnesses here since a federal statutes authorizes subpoenas to obtain

21  deposition testimony and documents in support of foreign litigation.  (*See, e.g., J.C.*

22  *Renfroe & Sons, Inc. v. Renfroe Japan, Inc.,* 515 F.Supp.2d 1258, *10-15 1266–1270

23  (M.D.Fla. 2007) (explaining differences between the two jurisdictions); *see also* 28

24  U.S.C. § 1782 ("[t]he district court in the district in which a person resides or is found

25  may order him to give his testimony or statement or to produce a document or other

26  

---

27  [8]  Such persons include, for example, Hiroshi Ohno and the more than a dozen other participants in the investor group, others at Suzuki's company who had direct

28  involvement in the transaction, JAIC personnel, Toshiba personnel, and Antara's other brokers in Japan.  Antara could easily list more than twenty people residing in Japan would be potential witnesses in this case.  None, however, are as critical as Suzuki.

1    thing for use in a foreign or other international proceeding"). This factor therefore
2    weighs in favor of Japan.

3          So does the second factor, which is the availability of evidence already
4    gathered from the litigation Ohkubo is currently pursuing against Eurus (Antara's
5    Japanese sponsor company) in Japan. Courts routinely look to existing litigation in
6    one forum as a strong factor favoring further jurisdiction in that forum because "a
7    significant number of the same witnesses will be needed in both proceedings and
8    much the same evidence will be needed in both proceedings and much the same
9    evidence will have to be presented in both courts." (*Lueck,* 236 F.3d at 1147). "[T]he
10   existence of related proceedings [make it] all the more clear that the private interest
11   factors weigh in favor of dismissal." (*Id.*).

12         2.    **The Proper Interpretation of The Terms Of The Investment**
13               **Contract Is Crucial, And The Tokyo District Court Is Better**
14               **Positioned To Address This Issue.**

15         The second key factor favoring the Tokyo District Court, after Suzuki's
16   availability, is the centrality of Ohkubo's Japanese Investment Contract (Exhibit C to
17   the Complaint). According to Ohkubo, this unique document basically turns his
18   investment in Antara, a biotech start up company, into a no-risk demand note with
19   upside. (Complaint ¶¶15-18; Opp. at 12). In his view, if he likes his investment, he
20   gets to keep it until the company goes public and he cashes in. If he does not, he
21   supposedly has the right to have the Company repurchase his stock at any time, for the
22   cost of his investment plus interest. Antara's view, and the actual language of the
23   document, are quite different.

24         The proper interpretation of the terms of this Contract is critical to the
25   case. These terms are critical to Ohkubo's breach of contract claim, because
26   obviously any breach hinges on the proper construction of what Antara's rights and
27   obligations are under the Contract in the first place. And they are critical to Ohkubo's
28   fraud claim, because he says this supposed right to repurchase was a major reason he

1    invested, and it was a promise Antara supposedly never intended to perform. (Opp. at
2    12:8-25).

3          The proper interpretation of the Contract, in turn, raises a litany of critical
4    questions that the Court must answer. For example, does California or Japanese law
5    govern the interpretation of the Contract? What is the appropriate translation of the
6    Japanese words to English, and do they accurately convey the meaning of the
7    Contract's terms? How are these terms construed in light of Japanese business custom
8    and practice? Do they really give Ohkubo an unlimited right to demand repurchase,
9    or is the right limited in some way? Does Antara have to repurchase the stock
10   immediately, or at a time when it has the financial ability to do so and it makes sense
11   for the company? Was there a meeting of the minds on these issues such that the
12   terms enforceable?

13         Many of these questions are ones that the Tokyo District is better
14   positioned to answer. It speaks the language, understands the business custom and
15   practice, and (as detailed in the next section) is already in the process of interpreting
16   exactly the same provisions that Ohkubo is now asking this Court to decide.
17   (Nagashima Decl. ¶5). To be sure, the Northern District has an interest in regulating
18   the companies that do business here. But that interest is slight in the context of this
19   case, where the transaction was between the company and a Japanese national, in
20   Japan, under the terms of a Japanese language contract. Under these circumstances,
21   having the Court shoulder the burdens of addressing these same issues, without the
22   inherent advantages that the Tokyo District Court enjoys, is entirely unnecessary.
23   (*See, e.g., Arsape,* 2004 U.S. Dist. LEXIS 24280, *18-19 (dismissing case on forum
24   *non conveniens* grounds, in part to avoid "unnecessary problems in conflicts of laws
25   or in the potential application of forum laws"; *see also* Motion at 10-11 (collecting
26   additional cases).

27

28

1151602.2

3. **The Tokyo District Court Is Already Addressing The Terms Investment Contract In Ohkubo's Current Litigation There.**

This brings us to the last key factor, Ohkubo's current litigation against Eurus in Japan over the terms of the same investment Contract. The Tokyo District Court is not just better positioned to deal with the issues raised by this case, it is *already in the process of addressing them.* Indeed, according to Ohkubo's Japanese counsel, a decision is literally months away. (Kawada Decl. ¶4). Whatever little weight should be given to Ohkubo's decision to file a new case here, it certainly does not justify the duplication of resources, risk of inconsistent judgments, and other burdens on this Court that would attend a litigation on the same issues the Tokyo District Court is already considering. (*See* Kawada Decl. ¶¶4-6; Nagashima Decl. ¶5; *see also* Motion at 10 (citing *Oversees Media v. Skvortsov,* 441 F.Supp.2d 610, 618 (S.D.N.Y. 2006).

## IV. CONCLUSION

For all of the foregoing reasons, Antara respectfully requests that the Court grant this motion and dismiss Ohkubo's complaint in favor of the Tokyo District Court.

DATED: March 31, 2008    **WESTON, BENSHOOF, ROCHEFORT, RUBALCAVA & MacCUISH LLP**

_____
/s/
Michael J. Hartley
Attorneys for Defendants

1151602.2