SQUIRE, SANDERS & DEMPSEY L.L.P.
Nathan Lane III (State Bar # 50961)
Joseph A. Meckes (State Bar # 190279)
One Maritime Plaza, Suite 300
San Francisco, California 94111-3492
Telephone: +1.415.954.0200
Facsimile: +1.415.393.9887
Email: NLane@ssd.com
JMeckes@ssd.com

Attorneys for Plaintiff
IZUMI OHKUBO

WESTON, BENSHOOF, ROCHEFORT,
RUBALCALVA & MacCUISH LLP
Michael J. Hartley (State Bar # 189375)
Mackenzie E. Hunt (State Bar # 251127)
333 South Hope Street, 16th Floor
Los Angeles, California 90071
Telephone: +1.213.576.1000
Facsimile: +1. 213.576.1100
Email: mhartley@wbcounsel.com
mhunt@wbcounsel.com

Attorneys for Defendants
ANTARA BIOSCIENCES, INC., MARC R.
LABGOLD and DANA ICHINOTSUBO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IZUMI OHKUBO,<br><br>Plaintiff,<br><br>vs.<br><br>ANTARA BIOSCIENCES, INC.,<br>MARC R. LABGOLD and DANA ICHINOTSUBO,<br><br>Defendants. | Case No. C07 06354 JW<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: April 14, 2008<br><br>Time: 10:00 a.m. |

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Case No. C07 06354 JW

I. **JURISDICTION AND SERVICE:**

*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

Mr. Ohkubo has brought this case as a diversity action under 28 U.S.C. § 1332. All existing parties have been served. Defendants do not contest personal jurisdiction in this Court, but have filed a Motion to Dismiss the Complaint for improper venue and under the doctrine of *forum non conveniens*.

II. **FACTS:**

*A brief chronology of the facts and a statement of the principal factual issues in dispute*

A. **Plaintiff's statement**

In 2006, understanding the difficulties in raising capital from domestic sources, defendants Labgold and Ichinotsubo decided to seek investors in other countries to provide venture funding for in their technology start-up company defendant Antara Biosciences, Inc. Labgold and Ichinotsubo chose to seek investors abroad, rather than domestically, to avoid disclosure and other regulatory requirements that would apply to the sale of non-publicly traded stock in the U.S.

In February 2006, defendants provided to Mr. Ohkubo various business plans and other documents through an intermediary in an effort to convince Mr. Ohkubo to invest in Antara. These business plans and other documents contained various statements that defendants knew to be untrue including that Antara had "a startup valuation of $10 million U.S. dollars (Paid-In-Capital) through founders of the Company," a "founded capitalization" . . . valued at $100,000,000," that a "current market valuation" for a company like Antara was $350,000,000, and that discussions with "Wallstreet market makers" led to the conclusion that Antara would have an "IPO value on the order of US$750,000,000" by late 2006. Defendants knew these statements to be untrue, but nonetheless made them to Mr. Ohkubo to deceive him into investing in Antara.

Before investing in Antara, Mr. Ohkubo asked defendants how much of their own funds the founders of the company had contributed as start-up capital, as stated in the business plans. In response, defendant Ichinotsubo falsely informed Mr. Ohkubo that Eurus and the Ichinotsubo Family Trust had invested $5,000,000, that the Labgold Trust had invested $2,000,000 and that the "Clinical Laboratories of Hawaii (Dr. Park)" had contributed $3,000,000. This statement was false. Acting for himself and the other defendants, Ichinotsubo knowingly made this false statement to induce Mr. Ohkubo to invest capital into Antara.

Around the same time, defendants provided to Mr. Ohkubo a draft Investment Contract written in Japanese that they had drafted. That Investment Contract, which was ultimately executed by Mr. Ohkubo, contained various promises that defendants Ichinotsubo and ultimately Labgold knew Antara did not intend to perform, including a promise to issue Mr. Ohkubo common shares in Antara; a promise to provide written notice of major matters, such as the issuance of new shares, the amendment of the articles of incorporation, important changes in Antara's business plans or other matters have a major impact on Antara's business; and a promise to repurchase Mr. Ohkubo's shares upon the occurrence of certain events.

Later that year, after defendants refused to provide documents required under the Investment Contract, Mr. Ohkubo requested that Antara repurchase his shares as required. Antara, however, refused to do so. Antara has since ceased as an active business.

Defendants' assertions made below about a purported relationship between Mr. Ohkubo and Toshiaki Suzuki and Mr. Ohkubo's alleged participation in a scheme to defraud Antara are false and unsupported.

B. **Defendants' Statement**

In 2005, Japanese corporation K.K. Eurus Genomics ("Eurus"), was approached by Toshiba concerning the possibility of developing an *in vitro* diagnostics business based upon technology that Toshiba had been developing for more than a decade. While the subject of more than 20 research publications, Toshiba had not been able to successfully commercialize the technology. Eurus President Ichinotsubo had been introduced to Toshiba by a Japanese businessman, Toshiaki Suzuki ("Suzuki") and his company, Genesys Technologies, Inc.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-2-
JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Case No. C07 06354 JW

("Genesys"). Suzuki urged Eurus to consider the business opportunity and assured Ichinotsubo that if undertaken, Sukuki would be able to assist in raising capital in Japan. Labgold, a partner in the law firm Patton Boggs LLP, was retained as counsel to Eurus to evaluate the Toshiba technology and patents. Antara was founded in December 2005 to develop and sell *in vitro* diagnostic systems based on the technology developed by Toshiba in Japan.

      The investor group that Suzuki brought to Antara's attention was a group that included plaintiff Ohkubo, another investor named Hiroshi Ohno ("Ohno") and a group of their respective Japanese associates. What Suzuki did not tell Antara, however, was that this group was not intending to make a *bona fide* investment in Antara. They were a ring of Suzuki's cohorts and investors, who had previously defrauded other companies of substantial sums of money. They would have Suzuki (or some in Suzuki's role) "solicit" them for investments and provide them with an extremely one-sided Japanese language investment contract that allowed them to demand repurchase of their stock after they had invested. They would then invest pursuant to these agreements, allows the "finder" to collect his commissions, and then shortly thereafter demand the return of their investments. The company would end up paying substantial sums for benefits that it was never intended to enjoy.

      This is the scheme the group perpetrated on Antara, Eurus, Ichinotsubo and Labgold. Over Antara's objections, Suzuki provided the investors with a subscription agreement that was extremely one-sided in favor of the investors and inconsistent with the subscription agreement drafted by Antara's U.S. counsel and entered into by U.S. investors. Suzuki insisted that this one-sided agreement was a standard Japanese investment contract, without which Japanese investors would never agree to invest in Antara. He also created various materials, without Antara's authorization, that he provided to Ohkubo and others about Antara that they could keep in their files. The investor group (headed by Ohno and Ohkubo) then invested approximately JP¥670,000,000 (then valued at approximately $5.7 million) in Antara (approximately $1.5 million of which was Ohkubo's), and Antara subsequently paid substantial commissions to Suzuki and Ohno. Suzuki and Ohno demanded payment of their commissions as soon as Ohkubo's investment had been made.

Within several months of their investment, and after the commissions had been paid, Ohno and Ohkubo demanded that Eurus repurchase their shares of Antara stock pursuant to their investment contracts. Eurus and Antara were understandably surprised by the demand – particularly in light of the fact that the demand was made only months after the investment had been made. When they confronted Suzuki, he admitted that Ohno and this group had instituted such a scheme with other companies where Ohno would demand repurchase after he had collected his commission. The damage, however, had already been done. With these initial "investors" demanding repayment, Antara's funding sources pulled more than $25 million in further financial backing for the company. Labgold and Ichinotsubo committed further funds of their own (incurring huge personal debt which they are still saddled with today), to keep the company and its full lab in operation.

Ohkubo and Ohno jointly initiated suit in Japan, before the Tokyo District Court as required by the subscription agreement pursuing the same claims that it brings before this Court. That case remains pending before the Tokyo District Court, and no trial date has been set.

By the middle of 2007, Antara had succeeded in creating prototype instruments, substantially advanced the Toshiba technology and had filed more than 40 patent applications.

### III. LEGAL ISSUES

*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

Mr. Ohkubo's claims are for breach of contract and fraud. Defendants will be asserting counterclaims including, but not limited to, fraud in the inducement, intentional interference with prospective economic relations, and breach of the covenant of good faith and fair dealing. Defendants' Motion to Dismiss (which is being heard the same day as this Case Management Conference) identifies certain disputed points of law, but the parties anticipate further issues will be identified if the case proceeds further.

### IV. MOTIONS:

*All prior and pending motions, their current status, and any anticipated motions.*

Defendants have moved to dismiss the Complaint in this Action for improper venue and under the doctrine of *forum non conveniens*. Mr. Ohkubo has opposed that Motion. This Motion is set for hearing on April 14, 2008, the same day as this Case Management Conference.

Both Mr. Ohkubo and Defendants anticipate that they will bring one or more motions for summary judgment. Defendants also anticipate the possibility of an early motion to determine whether Japanese or California law applies to the parties' claims. If Defendants assert counterclaims against Mr. Ohkubo based on the groundless assertions made above, Mr. Ohkubo expects to bring appropriate motions directed to those counterclaims. If they repeat the false allegations as to Mr. Ohkubo outside of the litigation, Mr. Ohkubo would seek to amend his pleadings to assert additional appropriate claims.

V.  **AMENDMENT OF PLEADINGS:**

*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

A.  **Plaintiff's Statement**

Mr. Ohkubo anticipates that he may be required to amend his pleadings to add claims and/or parties based on information obtained in discovery. Mr. Ohkubo proposes October 31, 2008 as the deadline for amendment.

B.  **Defendants' Statement**

Defendants agree with an October 31, 2008 deadline. Defendants will answer the Complaint within the time prescribed by the Court if their Motion to Dismiss is denied. They anticipate asserting affirmative defenses at that time. Defendants also anticipate filing counterclaims against Mr. Okhubo for, among other things, fraud in the inducement, tortious interference with prospective economic advantage, and breach of the covenant of good faith and fair dealing. Defendants are also considering a third-party complaint against Toshiaki Suzuki and his company Genesys Technologies, Inc., under Fed. R.. Civ. P. 14, and/or a separate action in this Court against Suzuki and/or Mr. Hiroshi Ohno that they would seek to consolidate with the present case.

## VI. EVIDENCE PRESERVATION:

*Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.*

### A. Plaintiff's Statement

Mr. Ohkubo has preserved relevant evidence by gathering and segregating all hard copy documents that he was provided, obtained or created in connection with his investment in Antara. Mr. Ohkubo has also confirmed that all e-mails of which he was a recipient (either as a primary recipient or "cc") that have any relation to his investment in Antara have been segregated and preserved in the e-mail system he used to send and receive e-mails during the relevant time period.

### B. Defendants' Statement

Defendants have preserved relevant evidence by maintaining all Antara books and records and Antara-related materials (both hard copy and electronic) in their possession, custody or control, including emails. Defendants have confirmed that none of them have any document-destruction programs or ongoing erasures of electronic materials that would affect any Antara-related materials. They have also confirmed that they will not institute any such programs or erasures while this litigation is pending.

## VII. DISCLOSURES:

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.*

Mr. Ohkubo has made full and timely disclosures to the extent required under Fed. R. Civ. P. 26 on March 31, 2008. Defendants timely objected on March 31, 2008 to any disclosures under Rule 26(a)(1)(C), on the ground that discovery is inappropriate at this juncture given their pending Motion to Dismiss the Complaint for improper venue and *forum non conveniens*. On or before April 9, 2008, without waiver of their rights and/or objections, Defendants intend to withdraw their objections and made full disclosures to the extent required under Fed. R. Civ. P. 26.

## VIII. DISCOVERY

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).*

Mr. Ohkubo has served a set of Requests for Production of Documents, with a return date of April 29, 2008. Defendants have not served discovery at this time. Pursuant to Rule 26(f)(3), the parties propose the following discovery plan, noting differences between their positions where applicable:

1. **Timing of Disclosures:** Mr. Ohkubo proposes no changes to the timing, form, or requirement for disclosures and states that his initial disclosures were made on March 31, 2008. Defendants intend to withdraw their objections and will serve their initial disclosures by April 9, 2008.

2. **Topics for Discovery:**

   A. **Plaintiff's Statement**

   Mr. Ohkubo expects that, *inter alia*, discovery will be needed regarding the financial condition of Antara before and after the time defendants were soliciting investment in Antara; whether defendants intended to perform promises contained in the Investment Contract; whether defendants believed the statements contained in the Business Plan and Business Summary were true; the value of Antara, including but not limited to the value of any assets and capitalization; the individual defendants' investments in Antara (if any); the terms under which defendants issued stock to company insiders and others; and other matters relevant to Mr. Ohkubo's claims and any defenses asserted by defendants.

   B. **Defendants' Statement**

   Defendants expect that, *inter alia*, discovery will be needed regarding the nature and history of Mr. Ohkubo's relationship with Suzuki and Genesys, including but not limited to any financial dealings; the nature and history of Mr. Okhubo's relationship with Ohno and the rest of their investment group, including but not limited to all business and financial dealings; all communications and

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-7-
JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Case No. C07 06354 JW

dealings between Mr. Ohkubo, Suzuki, Ohno and the rest of their investment group regarding Antara; the identification of all documents and information allegedly provided by Suzuki to Ohkubo and the source of the materials that Suzuki allegedly provided to Mr. Ohkubo regarding Antara; the source and drafting of Ohkubo's Investment Contract; the alleged reasons for Mr. Okhubo's demand for repurchase of his stock in Antara; prior instances where Mr. Ohkubo, Ohno or others in their investment group have made investments and demanded repurchase of their stock; all discussions and information exchanged between Ohkubo, Ohno, Suzuki and Toshiba; Ohkubo's, Ohno's and Suzuki's interference with Antara's efforts to raise capital; and other matters relevant to the basis for Mr. Ohkubo's claims, Defendants' defenses, Defendants' counterclaims against Mr. Ohkubo and any third-party claims against Suzuki and Ohno.

3.  **Electronically Stored Information:** Counsel for plaintiff has proposed a protocol for producing electronically stored information, which protocol is outlined in Mr. Ohkubo's First Set of Requests for Production of Documents. Defendants are evaluating the proposed protocol and expect that the parties can reach a mutually acceptable arrangement if the case proceeds forward.

4.  **Inadvertent Production of Privileged Matters:** The parties agree that claims of privilege or work product are not waived if protected documents are inadvertently produced in discovery provided that producing counsel notify receiving counsel within a reasonable time after discovery of inadvertent disclosure.

5.  **Changes to Limits on Discovery:** The parties agree that each party should be permitted to take 15 depositions, but shall retain the right to approach the Court for additional depositions should good cause be shown. Neither side proposes any other changes to the limitations on discovery imposed under the rules.

6.  **Protective Orders and Other Matters:** Pursuant to Rule 26(c), Mr.

Ohkubo has proposed that defendants agree to entry of this Court's standard stipulated protective order. Defendants believe that this Court's standard order may be appropriate, but believe that entry of a protective order is premature given their outstanding Motion to Dismiss.

## IX. CLASS ACTIONS

Not applicable

## X. RELATED CASES:

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

### A. Plaintiff's Statement

Mr. Ohkubo is not aware of any other case that may impact this Action or that meets the definition of "related case" under this Court's local rules.

### B. Defendants' Statement

Defendants believe that Mr. Ohkubo's action against Eurus in the Tokyo District Court (*Izhumi Ohkubo, et al. v. Eurus Japan*) is a related action that pertains to precisely the same issues before this Court and that that it would have collateral estoppel effect against Mr. Ohkubo should that Court rule against him.

## XI. RELIEF:

*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

### A. Plaintiff's Statement

Mr. Ohkubo is currently seeking ¥ 190 million in contract and tort damages and interest as provided by contract and by law, as well as punitive damages. This is the amount of Mr. Ohkubo's investment in Antara, which investment was procured by defendants' fraud and which amount defendant Antara must pay Mr. Ohkubo to repurchase shares acquired from Antara under the purchase agreement. Mr. Ohkubo may seek additional damages if Antara refuses to purchase

other shares tendered for repurchase pursuant to the terms of the Investment Agreement.

### B. Defendants' Statement

Defendants anticipate seeking in excess of $25 million in contract and tort damages and interest as provided by contract and by law, as well as punitive damages. The basis for calculating these damages will likely be the subject of expert testimony, but would include Antara's lost profits, its diminished value as a result of Ohkubo's actions, Labgold's and Ichinotsubo's lost investment in the company (in excess of $10 million) and associated costs. Defendants believe that any damages recoverable by Mr. Ohkubo, should he establish liability, should not exceed the amount of his investment in the Company.

## XII. SETTLEMENT AND ADR:

*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

The parties are willing to stipulate to court-sponsored mediation to be completed no later than October 31, 2008.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES:

*Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.*

The parties do not consent to having a magistrate judge conduct all further proceedings.

## XIV. OTHER REFERENCES:

*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

The parties agree that this matter is not suitable for reference to binding arbitration or the Judicial Panel on Multidistrict Litigation. The parties currently see no need for appointment of a special master.

## XV. NARROWING OF ISSUES:

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

The parties have explored potential narrowing of factual issues, but have been unable to

reach any agreement at this time. Some narrowing of the issues may be possible through stipulation after the parties have had an opportunity to take discovery.

XVI. **EXPEDITED SCHEDULE:**

*Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.*

A. **Plaintiff's Statement**

Mr. Ohkubo requests that this Court set a trial date in early 2009, but does not request any further expedited treatment. Mr. Ohkubo observes that Defendants have not identified any of the witnesses whose testimony they seek in Japan other than Toshiaki Suzuki, who has agreed to appear for deposition at a U.S. consulate in Japan. Mr. Ohkubo has agreed himself to come to the United States for deposition and to arrange for any of his employees with relevant knowledge likewise to give testimony in the United States. Mr. Ohkubo has no control over any other witnesses and so has no ability to bring them to the United States.

B. **Defendants' Statement**

Defendants request the earliest possible trial date, consistent with their ability to schedule depositions for the necessary Japanese witnesses through the American embassy in Tokyo. To the extent Mr. Ohkubo is willing to bring these witnesses to the United States, Defendants believe a trial in late 2008 would be appropriate.

XVII. **SCHEDULING:**

*Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

| Event | Plaintiff's Proposal | Defendants' Proposal* |
|---|---|---|
| Fact Discovery Cut Off | December 2, 2008 | October 31, 2008 |
| Deadline for Expert Disclosures | December 15, 2008 | October 31, 2008 |
| Deadline for Expert Rebuttal Disclosures | January 16, 2009 | November 17, 2008 |
| Expert Discovery Cut Off | February 13, 2009 | December 1, 2008 |
| Deadline for Hearing Dispositive Motions | May 4, 2009 | December 15, 2008 |
| Final Pretrial Conference | May 25, 2009 | January 12, 2009 |
| Trial | June 2, 2009 | January 26, 2009 |

* Assumes no substantial delays in being able to schedule witnesses for deposition at the U.S. embassy in Tokyo. In the event of such delays, additional time would be required.

-11-
JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Case No. C07 06354 JW

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

Plaintiff objects to Defendants' proposed schedule because the suggested dates for expert disclosures are inconsistent with Fed. R. Civ. P. 26(a)(2)(C). Plaintiff further objects to Defendants' schedule because the proposed deadline for hearing dispositive motions would not allow sufficient time for preparation of such motions after the close of fact discovery and does not allow for any dispositive motions at all after the close of expert discovery.

## XVIII. TRIAL

*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

Mr. Ohkubo estimates that trial will require six full trial days or nine half trial days. Defendants estimate that trial will require twelve full trial days, or fifteen half trial days.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS:

*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

Mr. Ohkubo has filed a certificate of interested parties (Dkt. 22), wherein he states that "Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Defendants have filed a certificate of interested parties (Dkt. 10-2) wherein they state that "Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report."

///
///
///

XX. **OTHER MATTERS**

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

None.

Dated: April 4, 2008              SQUIRE, SANDERS & DEMPSEY, L.L.P.

                                  By: ___/JAM/ *Joseph A. Meckes*_____
                                          Joseph A. Meckes

                                  Attorneys for Plaintiff
                                  IZUMI OHKUBO

Dated: April 4, 2008              WESTON, BENSHOOF, ROCHEFORT,
                                  RUBALCALVA & MacCUISH.

                                  By: ___/MJH/ *Michael J. Hartley*_____
                                          Michael Hartley

                                  Attorneys for Defendants
                                  ANTARA BIOSCIENCES, INC., MARC R.
                                  LABGOLD and DANA ICHINOTSUBO